T. P. YARBORO ET AL. v. ELIZABETH BREWSTER.

In the administration of an estate the probate court has jurisdiction to ascertain *what is* the homestead; yet the court has no jurisdiction to order the sale of the homestead, nor would a purchaser at such sale take any right as against the minor children.

APPEAL from Fannin. Tried below before the Hon. W. H. Andrews.

The opinion of the court presents the facts.

*S. B. Maxey,* for appellants.—The claimants are non-residents. (30 Texas, 636, Huffman v. Neuhaus; 31 Texas, 688, Welch v. Rice.)

The jurisdiction of probate courts over estates of decedents is unquestioned.

In Lynch v. Baxter, 4 Texas, Mr. Justice Lipscomb, speaking for the court, says, on page 445, that the probate court has jurisdiction over the estates of deceased persons cannot be doubted; that this jurisdiction was brought into exercise directly upon the property by the petitioner praying the decree for an order of sale of the land, is equally clear. The land was the subject matter on which the court exercised its jurisdiction; whatever might be the order, it was a question before a competent court, and its decision was subject to review by appeal, but could not be attacked in a collateral way. That it was a proceeding *in rem* can be made manifest by supposing that the heirs of the intestate had sued Lynch, the purchaser, and attempted to show that this jugdment or decree for the sale of the land was void, because they had no notice and were not parties to the proceedings of the probate court. The answer would be that it was not necessary to make them parties, because the proceedings were *in rem*, acting on the land directly, and that the decree of the court could not be collaterally attacked; * * and the purchaser, having purchased without fraud or collusion with the administrator, would be protected by the sale, if the decree under which it was made was the decree of a court of competent jurisdiction.

This would come clearly within the rule laid down in Wyman *et al.* v. Campbell *et al.*, and the purchaser would not be affected by any irregularity in the proceedings or error in the judgment of the court in making that decree; all the vigilance the law would exact from him would be to see that the court making the decree had

competent jurisdiction, and he could not be called upon to inquire whether the evidence before the judge of the necessity of the sale had been spread on the record or not. (To the same effect see 1 Starkie on Evidence, pp. 217, 241.)

In the same opinion the court says : " I have been so forcibly struck with the practical good sense of the remarks of the Supreme Court of Ohio on this subject that I trust I shall be pardoned for introducing them here. In the case of the Lessee of Goforth v. Longworth (4 Ohio R., 129), the court says : ' It is held to be well settled that courts give a liberal construction to statutes authorizing sales of real estate by executors and administrators. Public policy requires that all reasonable presumptions should be made in support of such sales, especially respecting matters *in pais*. The number of titles thus derived, and the too frequent inaccuracy of clerks and others concerned in effecting these sales, render this necessary. If a different rule prevailed purchasers would be timid, and estates consequently be sold at diminished value, to the prejudice of heirs and creditors.' "

I have transcribed largely from Lynch v. Baxter, because it breathes the philosophy of the law on the matter in hand, and I believe exactly pertinent to this case. The estate of Grimes being in process of administration in the Probate Court of Fannin county, its jurisdiction was brought directly in exercise upon this land by the petition for its sale. It was a proceeding *in rem*, acting directly on the land, and the decree ordering its sale and confirming the same cannot be collaterally attacked. The purchasers were not bound to know more than that the Probate Court of Fannin county had jurisdiction of the estate of James Grimes; that it had rendered a decree ordering the sale of the land; and they could not be called on to know that the evidence on which the decree

was rendered was sufficient.   If this was a homestead, or plaintiffs were entitled, the proof would have been by matters *in pais*, and all law justifies the purchasers in concluding that all facts necessary to uphold the decree existed.

In Grignon's Lessee v. Astor, the Supreme Court of the United States held that where a County Court had jurisdiction to order a sale of a decedent's estate, on the representation and finding of certain facts, and the record showed that a petition was presented and the order made, that the granting of the license was a binding adjudication; that all facts necessary to give jurisdiction as well as to warrant the license existed, and that the record was conclusive evidence thereof.   (2 Howard, 319.)   In the same case the court says: "Titles acquired under the proceedings of courts of competent jurisdiction must be deemed inviolable in collateral actions, or none can know what is his own; and there are no judicial sales around which greater sanctity ought to be placed than those made of the estates of decedents by order of those courts to whom the laws of the States confide full jurisdiction over the subjects."   This is quoted approvingly in Poor v. Boyce, 12 Texas, 451.   In this case, on page 449, the court says: "The petition of the administratrix gave the court jurisdiction.   (Finch v. Edmundson, 9 Texas, 504.)   All other questions, in the absence of fraud, are concluded by the judgment."   Now if the jurisdiction was acquired by the petition, then in this case it was acquired, because the petition for sale was filed; and if all other questions, in the absence of fraud, are concluded by the judgment, then the questions raised by plaintiffs are concluded, for there was no fraud.

In Burdett v. Silsbee (15 Texas, 617), Mr. Justice Wheeler, speaking for the court, quotes with great approbation McPherson v. Cauliff (11 Serg. & Rawle, 422),

as follows: "If such a purchaser" (a purchaser at a sale by order of the Orphan's Court) "is not protected," they say, "then, as was said by the Lord Keeper in Windham v. Windham (3 Ch. Rep., 12), where a like attack was made on a sale under a decree of a court of chancery, you 'blow up with gunpowder the whole jurisdiction;' and here, if protection be denied to honest purchasers, you lay a train of gunpowder throughout the whole State, and this decision would be a signal to set fire to it; for nothing has been more irregular than the practice of these courts generally; there may be exceptions, but they are very rare." This case of McPherson v. Cauliff was referred to approvingly by the Supreme Court of the United States in Thompson v. Tolmie, 2 Pet., 157, *et seq.* In this last case the court says: "If the purchaser was responsible for the mistakes of the court, in point of fact, after they had adjudicated upon the facts and acted upon them, these sales would be snares to honest men. The purchaser is not bound to look further back than the order of the court." (15 Texas, 618.) Now the court had jurisdiction, and therefore had a right to pass upon the facts, and although it may have committed a mistake as to the facts, yet the purchaser was not bound to look beyond the decree. In Elliott v. Piersol (1 Pet., 340), the court says: "When a court has jurisdiction it has a right to decide every question that occurs in the case, and whether its decision be correct or not, its judgment, until reversed, is regarded as binding in every other court." This is quoted with approbation by our Supreme Court in Burdett v. Silsbee (15 Texas, 518, 619), and the court adds: "This is declared to be the clear and well settled law, as applied to the decisions of county and other courts having cognizance of the settlement of estates;" and our court, in the same opinion, says these principles are "salutary and firmly established, on which

depend not only the certainty of the enjoyment of rights secured by the sacred guaranty of the Constitution, but the preservation of social order." If these principles are salutary and firmly established, then appellants will be left in the undisturbed enjoyment of their honestly acquired property. In Alexander v. Maverick (18 Texas, 194), this court quotes with approbation Tucker v. Harris (13 Geo., 1). That case decides that Courts of Ordinary (constituted as are our Probate Courts), are "courts of general jurisdiction over testate and intestate estates; that their judgments relative to that subject matter stand upon the same footing as the judgments of any other court of general jurisdiction." . "The jurisdiction being established," the court says, "all presumption must be made in favor of what does not appear. The court having the right to decide upon the application, the purchaser is not bound to go behind the judgment of the court."

Now this decision reduces the case in hand to a nutshell.

Did the Probate Court of Fannin county have a right to decide upon the application of the administrator of Grimes? Did it exercise that right? If these questions are answered affirmatively, as they are bound to be, then the purchasers are not bound to go behind the judgment of the court, and the appellants will not be molested. In the case above cited of Tucker v. Harris, Judge Lumpkin, who delivered the opinion, cites Kennedy v. Nach Smith, in which the court says: "Beyond the decree the purchaser is not bound to look. The inquiries upon ejectment are: Was there an administrator and order to sell, such as would authorize the administrator to make sale? Was the sale fair? If so, the settled rule is *de fide et officio judicis non recipitur quæstio*. And it is asserted that no sale in that State ever has been declared void in ejectment, against a purchaser *bona fide*, for any alleged irregularity in the Orphan's Court, or because the

decree of the court was founded on mistake." This court further shows that where a party dies intestate, the Orphan's Court has power over his estate, "and any one acting on the faith of their judicial acts will be protected." (Alexander v. Maverick, 18 Texas, 196.) The principle that the purchaser is not bound to look beyond the decree of the court is reiterated in George v. Watson (19 Texas, page 370).

Recurring to the Georgia case quoted in Alexander v. Maverick, how will the queries there put be answered in this case? 1. Was there an administrator and an order to sell, such as would authorize the administrator to make the sale? Undoubtedly there was an administrator, and a direct, unmistakable order authorizing him to sell. 2. Was the sale fair? There is no question of it. Then *de fide et officio judicis non recipitur quæstio* directly applies, and the question is settled.

*Throckmorton & Brown*, for appellees.—"The questions of fact were fairly presented to the jury, and by them determined, and the court will not undertake to revise their finding, because the court might be of a contrary opinion." (24 Texas, 288; 25 Texas, 88; 25 Texas, Sup., 376.)

Grimes' wife abandoned him, and left the State in his lifetime, and has never asserted any right or claim. (8 Texas, 312; 9 Texas, 630.) As tenants in common, appellees might maintain this suit. (16 Texas, 506.)

At the death of their father, appellees resided in the State. Their subsequent removal did not affect their rights. (17 Texas, 180, Green v. Crow.)

If the land in controversy was the homestead of Grimes at his death, then it passed to his minor children absolutely *eo instanti*, upon the death of the father; the estate being insolvent, the probate court had no juris-

diction over it. (See 17 Texas, 180 ; 21 Texas, 664 ; 30 Texas, 610.) Any order made relative to property not subject to the power of the court is void. The homestead rights of the widow and minor children stand upon a different basis to the rights of heirs in property received by descent. This right is superior to the claims of creditors and legatees. (See Runnells v. Runnells, 27 Texas, 515 ; Green v. Crow, 17 Texas, 187.)

It is insisted by appellants' counsel that the question of homestead was necessarily involved in the order for sales.

In this we think the learned counsel have fallen into an error. The question might have been determined if the children had been parties to the application for the order, but not otherwise, and such does not appear to have been the case.

In the cases cited the points held to be concluded by the action of the court were not incidentally, but directly and necessarily, involved in the proceeding. No authority goes further than to hold that such matters as under the pleading might have been determined, are concluded. These questions are necessarily involved in ordering the sale of land under the law of 1848 ; that there are debts remaining unpaid (or some special reason for it, as for partition, etc.); that there was not sufficient personal property belonging to the estate to pay the debts. If nothing appeared from the record to the contrary, the court would presume the existence of the necessity, and the order would be conclusive ; but where the contrary is apparent from the record itself, no such presumption can be indulged. We will review some of the cases cited by appellants, and endeavor to show their inapplicability to this case.

Yates v. Houston (3 Texas, 433) is relied upon as authority. In that case the estate of James had been duly partitioned and the rights of the widow directly adjudi-

cated. The very gist of that proceeding was the interests of the claimants, and, in order to determine that interest, their relationship to the deceased. All persons interested were parties. The right to a specific portion of the estate depended upon this adjudication, and the court held the adjudication binding and conclusive.

In the case of Burdett v. Silsbee (15 Texas, 604), referred to by appellants, the question was as to the domicile of the deceased at his death. Every grant of letters of administration necessarily and unavoidably involved a determination of that question, and no letters could be otherwise granted; hence the grant of letters necessarily determined it, and such decision is held to be conclusive.

Lockhart v. White (18 Texas, 102) ·is a case in which the court did act upon the claim of the reputed widow, and having so acted, it was held to conclude an inquiry into her right; that her relationship was necessarily involved, and being so involved, the decision was final.

If appellees had applied to the court for the homestead, etc., it would necessarily have involved the decision of their relationship as children and their minority, and would have been conclusive of those questions; but no such application was made nor necessary to be made. (21 Texas, 664.) We hold that the order of sale was null and void, and conferred no title upon the purchasers.

In Withers v. Patterson, Judge Bell gives a clear and elaborate solution of the question of void and voidable judgments. On page 495, 27 Texas, the learned judge says: "There is, perhaps, no subject in reference to which it is more difficult to lay down precise rules by which every case can be clearly determined than the subject of the jurisdiction of courts."

In order to test the validity of this order, it is necessary to understand what power the court has, or what is

meant by jurisdiction. We again quote from same page and volume:

"The jurisdiction of a court means the power or authority which a court has, by the Constitution and laws, to hear and determine causes between parties, and to carry its judgment into effect. It is a plain proposition that a court has no power to do anything which is not authorized by law. The powers of our county courts, in respect to estates of decedents, are all conferred by statute. Whatever the statute authorized the court to do, it may rightfully do. But it does not follow, because the statute authorizes the court to sell lands under certain circumstances, that all sales of land by order of the court are authorized."

In speaking of the right to attack the judgment or order collaterally, the court, in the same case, on page 497, says:

"But the difficulty still remains of determining under what circumstances a party who seeks to impeach the judgment of a court will be permitted to do so. And here, in respect to the county or probate courts, it is important to keep before the mind the distinction between the orders or judgment of a court made or rendered in the progress of a rightful administration, touching matters concerning which the court has a right to deliberate and decide, and orders or judgments which the court has not the power to make or render, or has the power to make or render only under certain circumstances, and for certain purposes. Orders or judgments of the first class can never be collaterally impeached, because, however erroneous they may be, they are never void. Orders or judgments which the court has not the power, under any circumstances, to make or render, are, of course, null; and being null, their nullity may be asserted in any collateral proceeding where they are relied upon to support a claim of right."

It is quite clear that if the probate court had no power to sell the homestead, the order for that purpose is a nullity, and confers no title upon the purchaser.

We now come to consider the power of the probate court over the homestead of the deceased, and in order to make our position clearly understood, we will again refer to the character of title held by a widow and minors in the homestead.

By the Constitution and laws the homestead was protected from forced sale during the lifetime of the father, and creditors had no right to have it sold for the payment of their debts. At his death the law devolved this right, with its exemptions, upon the minor children, and the only jurisdiction given to the probate court over the property is to separate it from that over which it had jurisdiction. No power of sale is given to the court, nor implied by the law of 1848, but expressly denied to it by the Constitution of the State. It is argued that the mandate of the statute requiring of the court to do a particular act for the protection of the appellees, conferred the power to do another and different thing, which would defeat its objects. It is a singular deduction to draw from the authorities, and is in direct conflict with the case of Withers v. Patterson.

Counsel cited on other points: 33 Texas, 39, Blair v. Thorpe; 20 Texas, 29, Shepherd v. Cassiday; 20 Texas, 97, Gouhenant v. Cockrell; 32 Texas, 352, Mills v. Von Buskirk; 6 Texas, 310, Farmer v. Simpson; 28 Texas, 101, Dodd & Co. v. Arnold; 16 Texas, 472, Robertson v. Paul; 34 Texas, 617, Ryland v. Rogers.

Supplemental brief by *S. B. Maxey* and *M. A. Knight.* The subject of jurisdiction was elaborately discussed. Authorities cited: 13 Wallace, Johnson v. Townsly; 15 Texas, 604, Burdett v. Silsbee; 18 Texas, 102, Lockhart

v. White; 3 Texas, 433, Yates v. Houston; Broom's Legal Max., 705, 6 Am. Ed.; 31 Texas, 91, Hamblin v. Warneke; 18 Texas, 413, Franklin v. Coffee; 6 Texas, 102, Sampson & Keene v. Williamson; 7 Texas, 13, Wood v. Wheeler; 8 Texas, 314, Trawick v. Harris; 9 Texas, 630, Earle v. Earle; 13 Texas, 68, Lee and Wife v. Kingsbury; 17 Texas, 593, Methery v. Walker; 11 Texas, 252, Cornell v. Chandler; 14 Texas, 463, James v. Thompson; 27 Texas, 688, Little v. Birdwell.

WALKER, J.—The appellees claim the property in controversy as a homestead.

The appellant's claim under an administrator's deed, made by virtue of an order of the Probate Court of Fannin county. The law of homestead, although much discussed, is very difficult of administration in this State, as every case must be more or less affected by its own peculiar facts.

The appellants claim as the heirs of James Grimes, deceased, who in 1859 occupied the premises now in controversy, with the appellees, then his minor children.

In 1859 or 1860 he left the place, and, as well as we can ascertain from the evidence, removed to a place which he had purchased in connection with a married son.

This place was deeded to his son, and we will not be allowed to presume that he ever intended to make it his homestead; indeed, the testimony of the witnesses leaves it in some doubt whether he ever lived upon this place or not.

Grimes afterwards settled on lands lying within the railroad reservation, and probably had some intention at one time of fixing his homestead upon these lands, but had not parted with his title to the land now in controversy, and was certainly at liberty to return and take up his home there at any time he saw proper.

It appears that before going in the army in 1864, where he seems to have died, he did express his intention of returning to the home here in controversy, which went by the name of Honey Grove   The plaintiffs were minors at the date of their father's death, and he left them no other home than the Honey Grove place.

The fact that this was his homestead at the time of his death is found by the jury, and we need not discuss the evidence on which the verdict is found, further than to say we deem it entirely sufficient to support the verdict. That the plaintiffs below are the legal heirs of James Grimes, and that they were minors at the time of his death, are facts not controverted.

It is perhaps proper to notice that James Grimes had a wife, who may have been living at the time of his death, upon whom his homestead might have descended, if she had been living with him, and had on his death become the head of the family; but it appears from the evidence that she had abandoned him and his minor children, under circumstances which probably render it unnecessary to discuss any supposed right of homestead in her to the property in question.   She is not a party to this suit, and may never claim any interest in the property of the husband she had abandoned.

Looking alone at the record before us, we can have no doubt that the jury found correctly, and that the property descended as a homestead to the minor children of James Grimes.

But it is contended that the sale by the administrator, under the order of the probate court, is conclusive against the appellees, and that this proceeding cannot be collaterally impeached.   There can be no doubt that the probate court has jurisdiction to determine what is the homestead left by a deceased person to his or her family. But there can be just as little doubt that neither the pro-

bate court nor any other court in the State of Texas has jurisdiction to order the sale of a homestead, to pay debts, where there is a family left who have the right to occupy it; and it is totally unnecessary to quote the authorities so often referred to by this court to support this doctrine. In this case there should have been no difficulty, there was no other real estate left by James Grimes at his death. An inventory was returned by the administrator which must have shown this fact. The rights of the minor heirs were totally disregarded, they were parties to no proceeding against them. No allowance was made in lieu of homestead, and their rights cannot be cut off by such an illegal proceeding. No equities attach to purchasers against them, for the probate court had no jurisdiction to order the sale. The judgment of the District Court is therefore affirmed.

AFFIRMED.