## J. L. CLINE v. VICTOR NIBLO ET AL.

No. 4702. · Decided June 25, 1928.
(8 S. W., 2d Series, 633.)

*Burgess, Owsley, Storey & Stewart,* for plaintiff in error.

The orders and decrees of the Probate Court and District Court of Dallas County, being regular upon their face in directing the sale of the property, were not subject to collateral attack in the District Court in this suit.

The application for sale in the estate of Anna Niblo reciting that a sale was necessary to pay taxes due upon the property and the sale being ordered for that purpose, the orders and decrees were not subject to collateral attack in the District Court.

County courts in all matters relating to the administration of estates of deceased persons and minors under the present constitution are courts of general jurisdiction as to all matters within the scope of the powers conferred upon them, is now the settled law of this state. Guilford v. Love, 49 Texas, 715; Weems v. Masterson, 80 Texas, 52; Templeton v. Ferguson, 89 Texas, 47; Crawford v. McDonald, 88 Texas, 626; Salos v. Munday, 125 S. W., 633.

It is the well established general rule that when a domestic judgment of a court of superior and general jurisdiction, acting within the scope of that jurisdiction, is assailed collaterally, every presumption is made in favor not only of the proceedings, but of the court's jurisdiction, both as regards the subject matter and the parties. Martin v. Burns, 80 Texas, 676; Iams v. Root, 55 S. W., 411.

*W. L. Curtis* and *Lyle Saxon,* for defendants in error.

The action of the Probate Court of Dallas County, directing the sale of the homestead of Anna Niblo, deceased, who at the time of her death left surviving her as constituent members of her family, Ethel Niblo, an unmarried daughter; and Bara Niblo and Elmo Niblo, minors, was void when not made for the purpose of paying either the purchase-money or a part of the purchase-money for labor

or material used in constructing improvements on the homestead, or taxes that were due on the homestead. Constitution of Texas, Art. 16 Sec. 50; Constitution of Texas, Art 16 Sec. 52; Revised Civil Statutes, 1925, Art. 3485; Sossaman v. Powell, 21 Texas, 664; Griffie v. Maxey, 58 Texas, 210; Yarboro v. Brewster, 38 Texas, 397; Zwernemann v. Von Rosenberg, 76 Texas, 522; Childers v. Henderson, 76 Texas, 664; Hall v. Fields, 81 Texas, 553; Lacy v. Lockett, 82 Texas, 190; Cameron v. Morris, 83 Texas, 14; Root v. Robinson, 93 Texas, 371; American Bonding Co. v. Logan, 106 Texas, 306; Griffin v. Harris, 88 S. W., 493; Stephenson v. Marsalis, 33 S. W., 383; Ross v. Martin, 28 S. W., 719; Allen v. Ramey, 226 S. W., 489; Dignowity v. Baumblatt, 85 S. W., 834; Robinson v. Seales, 242 S. W., 754; Ward v. Hinkle, 252 S. W., 238; Meyer v. Paxton, 78 Texas, 199; Hamblin v. Warnecke, 31 Texas, 91.

Where the application to sell the homestead of Anna Niblo, deceased, does not show any indebtedness for which the homestead is liable and may be sold, but merely recites that "there are also indebtedness for taxes, court costs, attorney's fees and so in an amount unknown to the petitioner," and not reciting there are any taxes due on the homestead the order of the court based upon such application, directing the sale of the homestead is void. Wright v. Stroud, 64 Texas, 66.

MR. CHIEF JUSTICE CURETON delivered the opinion of the court.

This case was originally heard by and judgment entered on an opinion and recommendation of the Commission of Appeals. However, because of its importance, and because the decree previously entered must be modified, we have concluded to write this opinion on the motion for rehearing.

The facts of this case are well stated by the Court of Civil Appeals in its opinion reported in 286 S. W., 298, and a complete statement here is deemed unnecessary.

Mrs. Anna Niblo, a widow, resident of Dallas County, died intestate in December, 1920, leaving as her heirs nine children, namely: Victor, Russel, Oscar, Grady, Urban, Stella Francisco (a married daughter), Miss Ethel, an unmarried daughter, Bara, a daughter, and Elmo, a son. All were adults except the last two named, who were minors.

At the time of her death Mrs. Niblo owned in her own right three lots in the City of Dallas; lots 1 and 2 being her homestead, on

which she had resided since 1903, and on which she resided at the time of her death with three of the children named above: Miss Ethel, an adult unmarried daughter, and the two minors, Bara and Elmo. In 1916 she abandoned the use of lot 3 as a part of the homestead, and a two-story residence was erected thereon, for rental purposes, on which, at the time of her death, there existed a lien indebtedness of approximately $4,000. Her entire estate consisted of the above named real estate, household goods and furniture.

The Court of Civil Appeals found that lots 1 and 2, the homestead property, were free from liens or incumbrances at the time of Mrs. Niblo's death, and that, aside from the amount due on lot 3 as above shown, the debts of the estate were general ones, for the payment of which the homestead could not be administered. Under the facts stated and as found by the Court of Civil Appeals, the rights of the heirs under the Constitution and laws of this State, upon the death of Mrs. Niblo, were as follows: The nine children inherited the whole of the property, share and share alike, subject only to the payment of the lien indebtedness against lot 3. R. S., Art. 3499; Constitution, Art. 16, Sec. 50; Zwernemann v. Von Rosenberg, 76 Texas, 522, 13 S. W., 485; Lacy v. Lockett, 82 Texas, 190, 17 S. W., 916; Cameron v. Morris, 83 Texas, 14, 18 S. W., 422; Hoefling v. Hoefling, 106 Texas, 350, 167 S. W., 210; American Bonding Co. v. Logan, 106 Texas, 306, 166 S. W., 1132; Wade v. Scott, 145 S. W., 675. Miss Ethel, the adult unmarried daughter, had the right to occupy the homestead so long as she elected to do so. R. S., Arts. 3485, 3488; Quintana v. Giraud, 209 S. W., 770; Lacy v. Lockett, 82 Texas, 190, 17 S. W., 916; Krueger v. Wolf, 12 Texas Civ. App., 167, 33 S. W., 663; Zwernemann v. Von Rosenberg, supra. Bara and Elmo, the minors, had the right to occupy the homestead jointly with their unmarried sister "so long as a guardian of the minor children may be permitted under the order of the proper court having jurisdiction to use and occupy the same." Constitution, Art. 16, Sec. 52; R. S., Arts. 3485, 3488. However, in this instance the minors had no guardian, and were, therefore, unable to assert their right to the occupancy of the homestead. Hall v. Fields, 81 Texas, 553, 17 S. W., 82; Hensel v. Int. B. & L. Assn., 85 Texas, 215, 20 S. W., 116; Osborn v. Osborn, 76 Texas, 494, 13 S. W., 538; Cox v. Oliver, 43 Texas Civ. App., 110, 95 S. W., 596. The homestead was not subject to partition or division among the other heirs so long as these rights of occupancy by the unmarried daughter and the minor children were asserted. Con-

stitution, Art. 16, Sec. 52; R. S., Arts. 3485, 3488, 3496, 3497; Foreman v. Meroney, 62 Texas, 723; Allen v. Allen, 158 S. W.; 1049; authorities supra.

No application was made to the probate court to set aside the homestead to those authorized to occupy the same. This, however, did not affect the rights of the heirs as stated above. Connell v. Chandler, 11 Texas, 249; American Bonding Co. v. Logan, 106 Texas, 306, 166 S. W., 1132.

At the time this suit was brought, the plaintiff in error, Cline, under claim of title through administration proceedings, was in possession of all three of the lots named, including lots 1 and 2, which were the homestead, to the exclusion of the heirs, including the minors.

In September, 1923, Victor Niblo, Russel Niblo, Stella Francisco, the married daughter of the deceased, joined by her husband, and Bara Niblo and Elmo Niblo, minors, through their next friend, Oscar Niblo, brought this suit in the District Court of Dallas County against plaintiff in error, in the form of trespass to try title to all three of the lots previously described. Plaintiff in error answered by a plea of not guilty and a special plea setting up his title through the administration, alleging the facts, and also basing thereon a plea of estoppel. In addition to this, he filed a cross action in the form of trespass to try title against the plaintiffs in that suit, and against all the other heirs of Anna Niblo, to recover the said three lots in controversy. The trial court held as a matter of law that the deed of conveyance to plaintiff in error by the administratrix conveyed title to him of lot 3, and that as a matter of law Ethel Niblo, Grady Niblo, and Russel Niblo were estopped by their acts and by the administratrix deed to claim title to their inheritance, and that their 3/9 interest had passed to the plaintiff in error; but that as a matter of law the deed of the administratrix did not divest Bara Niblo, Victor Niblo, Elmo Niblo, and Urban Niblo of title to their interests in lots 1 and 2, and that under the findings of the jury Stella Francisco and Oscar Niblo were not estopped to claim their interests in lots 1 and 2. The trial court also found that plaintiff in error had placed his improvements on lot 2 in good faith, and gave him judgment for these improvements. Ethel, Grady, and Russel Niblo did not appeal from the judgment of the lower court, and the question as to whether or not the estoppel was lawfully adjudged against them was not before the Court of Civil Appeals, and is not before this Court.

Miss Ethel Niblo, the unmarried daughter, was appointed administratrix of her mother's estate, and qualified as such. The application for letters of administration and the inventory returned did not disclose, nor did the application for the sale of the real estate allege or show, any lien or constitutional debts against the homestead property, or disclose that any of the property was of a homestead character. The application for sale did allege in general terms that the estate owed taxes in an amount unknown, but neither the application nor the evidence here allocated any part of this unknown amount of taxes to the homestead property. The application for sale did show that the real estate consisted of "residences," the only real estate owned by Mrs. Niblo, and that she left household goods and furniture, and *minor heirs*. There is nothing in the record to show that the questions of whether or not lots 1 and 2 were homestead property, or whether or not the claims against the estate were legal charges against the homestead or of the rights of the minor heirs and unmarried daughter to occupy the homestead property on lots 1 and 2 were ever before the probate court or adjudicated in any way. Upon hearing of the application to sell the property, the court directed the sale of the lots, and plaintiff in error, Cline, became the purchaser. When plaintiff in error went into possession of the property, he wrecked the homestead house which stood on lots 1 and 2, and erected on lot 2 a duplex cottage, using some of the material in the old house in this construction.

The Court of Civil Appeals found that the homestead property was ordered sold by the probate court for the purpose of paying general creditors of the estate, and the controlling question is whether or not in this, a collateral proceeding, the decree of the probate court ordering and approving the sale of the homestead property may be attacked. We think the authorities are conclusive that it can be attacked because void for lack of jurisdiction over the subject matter, although its void character may not appear on the face of the record. 13 R. C. L., p. 675, Sec. 134; 29 Corpus Juris, p. 979, Sec. 441, p. 1028, Sec. 526, p. 967, Sec. 415; Yarboro v. Brewster, 38 Texas, 397; Griffin v. Harris, 39 Texas Civ. App., 586, 88 S. W., 493; Allen v. Ramey, 226 S. W., 489; Hall v. Fields, 81 Texas, 553, 17 S. W., 82; Hamblin v. Warnecke, 31 Texas, 91; Kimmons v. Abraham, 176 S. W., 671; Dignowity v. Baumblatt, 38 Texas Civ. App., 363, 85 S. W., 834; Robinson v. Seales, 242 S. W., 754; Stephenson v. Marsalis, 11 Texas Civ. App., 162, 33 S. W., 383; Miller v. Davis, 69 Am., 1, 86 Am. St., 167, 64 S. W.,

97; Anthony v. Rice, 110 Mo., 223, 19 S. W., 423; McCloy v. Arnett, 47 Ark., 445, 2 S. W., 71; Showers v. Robinson, 43 Mich., 502, 5 N. W., 988; Tindall v. Peterson, 71 Neb., 160, 8 Anno. Cas., 721; Smith v. Wildman, 178 Pa., 245, 56 Am. St., 760, 36 L. R. A., 834.

The rule is stated in Ruling Case Law, supra, as follows:

"Ordinarily an order of the probate court directing the sale of the homestead of a decedent is void if made during the minority of his children or while his widow is unmarried and has not abandoned the homestead nor acquired any other in her own right."

Corpus Juris declares:

"Under Sale In Violation Of Homestead Laws, the general rule is that a forced or involuntary sale of homestead premises in violation of the provisions of the homestead law confers on the purchaser no title thereto, nor any right of possession; * * * A common application of the rule is that, where land is in fact a homestead of the extent and value allowed by law, and not in excess thereof, an attempted sale thereof is void and conveys no title to the purchaser." 29 Corpus Juris, p. 979, Sec. 441.

This authority also states the rule to be that the widow and minor children occupying a homestead are unaffected by the sale of the homestead, either with or without the order of the court. In Sec. 526, p. 1028, the text is as follows:

"Since the survivors as beneficiaries of the homestead are not represented by the executor or administrator of decedent, the interests of the widow and minor children in the homestead of decedent are not affected by a sale of the homestead premises with or without order of court; or whether the sale is not confirmed by the court, or is finally consummated and approved. The purchaser at the administrator's sale buys at his peril and is bound to take notice of the rights of the survivors."

The same authority again states the rule:

"In analogy to, and in accord with, the rule already stated, it seems that a valid sale of a homestead cannot be had under an execution to which it is not subject nor under a foreclosure or judicial decree seeking to enforce a liability lien, or encumbrance from which the homestead is wholly exempt by law. Even where homestead property may be sold, or where property more than sufficient to satisfy homestead exemptions is sought to be sold, a sale of the premises to which homestead rights have attached either under execution issuing out of a court of law or by virtue of a decree or

order of court of equity in disregard of the homestead exemption or without setting apart the homestead is void." 29 Corpus Juris, p. 967, Sec. 415.

These statements of the rule are consistent with our constitutional and statutory provisions, and with the authorities of this State. Constitution, Art. 16, Secs. 50, 52.

We have various statutes the effect of which is to withdraw homestead property from the jurisdiction of the probate court and deny it power to administer the homestead estate except where debts exist for which such an estate is constitutionally liable. See generally R. S., Arts. 3485, 3488, 3493, 3494, 3495, 3496, 3498, 3499, 3500, 3501. Space does not permit a statement of the substance of these several statutes, but we will direct particular attention to Art. 3499. The Constitution, in Sec. 50, Art. 16, declares that the homestead of the family "shall be and is hereby protected from forced sale for the payment of all debts except," etc. Art. 3499 in similar language exempts the *homestead estate* from liability for all debts of the decedent, except those for which it may be liable under the Constitution. These constitutional and statutory exemptions amount to a withdrawal of the homestead from the jurisdiction of probate courts in the absence of liabilities for which it may be held under the Constitution and statutes, as appears from the authorities cited and to be cited.

Interpreting and applying these Sections of the Constitution and various statutes, our courts have consistently held that probate or other judicial sales of exempt homestead property, in the absence of an affirmative showing in the decree that the question was adjudicated in the judgment leading up to the sale, may be inquired into and declared a nullity in collateral proceedings.

In the case of Yarboro v. Brewster, 38 Texas, 397, the appellees claimed the homestead property as heirs of their father, who died when they were minors. The appellants claimed under an administrator's deed made by virtue of an order of the probate court of Fannin County. Elaborate arguments were made pro and con on the issues raised in the case. It was argued by counsel for the appellants that the judgment of the probate court ordering the sale was one in rem, and could not be collaterally attacked, that the purchaser was not bound to look beyond the judgment. Counsel for the appellees contended that the administrator's sale was absolutely void, because the homestead passed upon the death of the father absolutely to his children, and the probate court had no juris-

diction over it. The Supreme Court, in an opinion by Justice Walker, held that the heirs rightly recovered against the claimant under the administrator's deed. In part this Court said:

"But it is contended that the sale by the administrator, under the order of the probate court, is conclusive against the appellees, and that this proceeding cannot be collaterally impeached. There can be no doubt that the probate court has jurisdiction to determine what is the homestead left by a deceased person to his or her family. *But there can be just as little doubt that neither the probate court nor any other court in the State of Texas has jurisdiction to order the sale of a homestead, to pay debts,* where there is a family left who have the right to occupy it; and it is totally unnecessary to quote the authorities so often referred to by this court to support this doctrine. In this case there should have been no difficulty, there was no other real estate left by James Grimes at his death. An inventory was returned by the administrator which must have shown this fact. The rights of the minor heirs were totally disregarded, they were parties to no proceeding against them. No allowance was made in lieu of homestead, and their rights cannot be cut off by such an illegal proceeding. No equities attach to purchasers against them, for the probate court had no jurisdiction to order the sale. The judgment of the district court is therefore affirmed." (Italics ours).

In the case of Griffin v. Harris, 39 Texas Civ. App., 586, 88 S. W., 493, in which a writ of error was denied by this Court, the Court of Civil Appeals held that where the land of a lunatic, on which he resided as head of the family, was sold to pay debts, the question as to whether the purchaser acquired a good title is not controlled by the fact that the records in the guardianship proceeding failed to show that the property was adjudged a homestead, but depends on whether the property was in fact the homestead of the lunatic when it was ordered sold. Griffin and his wife occupied a homestead. Griffin was adjudged a lunatic and sent to the State Insane Asylum. His wife was appointed guardian of his estate, and under orders of the probate court sold the homestead of Griffin to pay the debts of his estate. The purchaser at the probate sale, Harris, brought suit to recover, and recovered the land. Upon appeal by the guardian of Griffin, the case was reversed and rendered by the Court of Civil Appeals in favor of the lunatic. The court in passing upon the question in part said:

"The county court records did not affirmatively show that the land was not the homestead of Henry M. Griffin. The question as

to whether the purchaser, under the facts of this case, acquired a good title, is not controlled by the fact that the records in the guardianship proceedings failed to show that the property was the homestead of the lunatic. As we understand it, *the test is, was the property the homestead, in fact, of the lunatic at the time it was ordered sold, and at the time the sale was confirmed?"* (Italics ours.)

The court then held that the property was homestead, and the sale· void, in part saying:

"The Constitution of the state (article 16, § 50) protects the homestead from forced sale for the payment of all debts. Under this prohibition of the Constitution, the county court is deprived of the jurisdiction or power to order a sale of the homestead to pay the ordinary debts of the estate. Yarboro v. Brewster, 38 Texas, 397; Hamblin v. Warnecke, 31 Texas, 91; McCloy & Trotter v. Arnett, 47 Ark., 445, 2 S. W., 71. *The county court not having the power to order the sale, no title passed to the purchaser at a sale made in pursuance of such order. The order was a nullity, and it is immaterial whether the purchaser had knowledge of the fact that the property was the homestead or not. Having purchased under a void order, he took no title.* Withers v. Patterson, 27 Texas, 500, 501, 86 Am. Dec., 643." (Italics ours.)

In the case of Hall v. Fields, 81 Texas, 553, 17 S. W., 82, the suit was between Jennie Hall, the divorced wife of the deceased, and her wards, R. E. L. Hall and Elmer Hall, minor children of the deceased, and J. W. Fields. An application was filed by the guardian on behalf of her wards in the guardianship proceeding in the county court to have 200 acres of land belonging to the estate of the deceased, and occupied by him as a homestead, set apart to the minors. Fields resisted this application, claiming that he had purchased the land from the executor of Hall under an order of the county court made in pursuance of the will of the deceased, and that the minors were not entitled to any homestead right in the land. The county court granted the application and set the land apart for the use of the minors as homestead. On appeal to the District Court this judgment was reversed and the application of Mrs. Hall denied. Hence the appeal ultimately to the Supreme Court. Fields bought the land at a sale made by the executor under the will at public outcry, which sale was approved by the county court, and deed executed to him by the executor. Prior to this time Jennie Hall had been appointed guardian of the minors, and had filed an applica-

tion for the setting apart of the homestead. This application was resisted by Fields upon various grounds, and among others that the 200 acres involved had been sold to him by the executor under an order of the county court, that the court had approved the sale, ordered a conveyance to him, and that the conveyance had been executed, and that *"said sale had become a judgment of a court of competent jurisdiction, not subject to impeachment except in a direct proceeding."* The Supreme Court reversed and rendered this case in favor of the guardian and the children, although it was plainly a collateral attack on the probate proceedings under which Fields had become the purchaser of the property.

In Dignowity v. Baumblatt, 38 Texas Civ. App., 363, 85 S. W., 834, the action was one of trespass to try title to two tracts of land, instituted by Florence Jane Dignowity, a minor, and others. The district judge instructed a verdict for Baumblatt. The two tracts were the separate estate of Mrs. Judith A. Dignowity, who was the wife of E. L. Dignowity and the mother of the other plaintiffs. Mrs. Dignowity died in 1893. Prior thereto, in 1884, she and her husband had executed a deed of trust on the two tracts of land to secure third persons in the payment of a debt of $1400. *After her death her estate was administered, and the claim to secure which the deed of trust had been executed was allowed by the administrator, approved by the probate court, and the land sold by order of the court to satisfy the claim, and bought in by Baumblatt.* In passing on the questions presented the Court of Civil Appeals at San Antonio held that a deed of trust on a homestead was void, and that the land, if a homestead, was not subject to administration. The Court in part said:

"If the land in controversy was the homestead of appellants, it was not subject to administration, and any attempt on the part of the county court to subject it to administration was null and void. Childers v. Henderson, 76 Texas, 664, 13 S. W., 481."

The authorities quoted from and others cited suffice, we think, to show that a probate decree directing the sale of homestead property for the ordinary debts of the estate, when heirs survive, is void, and may be attacked collaterally. To say that such judgments may be attacked collaterally, while the usual language employed by the courts, is not quite accurate. If the probate records show that the court has attempted to exercise a power which it does not have, the judgment is void on its face, amounts to nothing, and may be disregarded in any forum. Freeman on Judgments, (5th ed.) Sec. 382,

Sec. 395. In cases, however, where the vice in the decree does not appear on its face, and the judgment does not show that the homestead question has been adjudicated, the courts permit the true facts to be shown and the invalidity of the decree to be established aliunde the record.

This is not so much a collateral attack on the judgment of the probate court as it is a declination on the part of the courts to conclusively presume that the homestead question has been determined in the probate proceedings, unless it so appears affirmatively from the record. If the record shows that the questions whether or not the property was homestead, or that the debts involved were chargeable against a homestead, then these issues, other requisites being present, are foreclosed, except upon direct attack upon justiciable grounds. Freeman on Judgments (5th ed.), Secs. 350, 372, 378, 379. But if these questions do not appear to have been adjudicated, the conclusive presumption of their involvement and determination does not obtain, and the real facts may be shown in another forum. This rule of law rests upon a sound basis.

The jurisdiction and power of probate courts to order the sale of homestead property, where heirs survive, is limited not only by the statutes, but by the Constitution itself. Constitution, Art. 16, Secs. 50, 52; R. S., Art. 3499, and others previously cited.

These constitutional and statutory exemptions are controlling and dominant limitations upon all the powers of government and upon all individuals and officers engaged in the execution of these powers.

It is too plain for argument that a probate court in dealing with the subject of the sale of a homestead is not acting under its broad general powers as a probate court, in aid of which the usual presumptions apply, nor under its common law powers, but is acting within a specially limited field of jurisdiction declared by the Constitution and statutes. These limitations are binding on the courts, and they have no jurisdiction to order the sale of a homestead except within the limitations permitted. So, then, under the general rule, the jurisdiction of a probate court to sell a homestead must appear of record, or the facts may be shown in another forum. Authorities supra; Freeman on Judgments, (5th ed.) Secs. 372, 354, 389; Tindall v. Peterson, 71 Neb., 160, 8 Anno. Cas., 721; see also Mingus v. Wadley, 115 Texas, 551, 562, 285 S. W., 1084; 15 Corpus Juris, 831, 832; Holmes v. Buckner, 67 Texas, 109, 2 S. W., 452; Calverley v. Shank, 28 Texas Civ. App., 473, 67 S. W., 435; Galpin v. Page, 85 U. S. (18 Wall.) 350; Guilford v. Love,

49 Texas, 715, 743; Cunningham v. Robison, 104 Texas, 385, 136 S. W., 441; Horan v. Wahrenberger, 9 Texas, 313, 319, 58 Am. Dec., 145. As said by a leading authority, with reference to probate courts:

"But owing to the character of the subject matter of their jurisdiction, the rule stated in a previous section that judgments in excess of the court's powers are invalid collaterally is peculiarly applicable to them. A decision affecting decedent's estates, though made by such a court after it has once acquired jurisdiction, would be entitled to no force and effect in so far as the court in rendering it overstepped its acquired jurisdiction or its powers under the law. Thus a probate judgment ordering the seizure and sale of land is void as to such seizure when the court had no power to order it, and an order allowing an administrator's sale is subject to successful attack where it contains land not described in the petition for sale, or is based on grounds not disclosed by the petition and not provided for by statute, *or authorize the sale of a homestead where the statute does not permit it.*" (Italics ours.) Freeman on Judgments (5th Ed.), Sec. 372.

Again, the same authority says:

"This well-established doctrine that a judgment beyond the court's power is invalid, is not limited in its application to any particular kind of judgment nor is it peculiar to the judgments of any particular court. Irrespective of the character or dignity of the tribunal pronouncing the decision, whether of inferior, limited or superior general jurisdiction, it must confine its determination within the authority it possesses under the law and the case. *If the court is exercising special statutory powers the measure of its authority is the statute itself, and a judgment in excess thereof is null and void and subject to collateral attack, a rule which finds frequent application in the case of probate judgments.*" (Italics ours.) Freeman on Judgments (5th ed.), Sec. 354.

The question is analogous to that sometimes presented where the District Court has foreclosed an attachment lien on homestead property. The District Court is one of undoubted general jurisdiction, with power to foreclose liens on real estate and determine all justiciable questions with reference thereto. Notwithstanding the existence, however, of this undoubted jurisdiction, when a District Court forecloses an attachment lien on property, and it is sold under the orders of the court, and the sale approved, our authorities hold that this does not foreclose the right of one who claims the land as

homestead to litigate that question in a collateral proceeding. Mayers v. Paxton, 78 Texas, 196, 14 S. W., 568; Willis v. Matthews, 46 Texas, 478; Seligson v. Collins, 64 Texas, 314; Beard v. Blum, 64 Texas, 59; Tobar v. Losana, 6 Texas Civ. App., 698, 25 S. W., 973. See also Speer & Goodnight v. Sykes, 102 Texas, 451, 132 Am. St., 896, 119 S. W., 86; Thompson v. Jones, 77 Texas, 626, 14 S. W., 222.

The rule stated is based upon the ground that the attachment proceeding will not be held to have determined the question of homestead unless the attaching plaintiff or the defendant has placed it in issue and had it determined. In other words, the courts decline to conclusively presume that a District Court, with full and complete power to determine every justiciable question which could arise growing out of an attachment lien and its foreclosure on real estate and sale thereunder, has determined the question of homestead unless the record affirmatively shows that question was determined; but, on the other hand, if the record is silent, will permit the issue to be litigated at another time and in a different forum, as shown by the various cases we have cited.

In the instant case the homestead question, in so far as the record discloses, was not in issue in the probate court, and was not adjudicated by that court. It therefore could properly be raised in this suit and the questions relative thereto determined, as has been done.

The question of the knowledge of the plaintiff in error that the property involved was homestead is not one of consequence here, since the order of the probate court was void for lack of jurisdiction over the subject matter. As to the parties here permitted to recover there is no issue of estoppel, and the Constitution declares that *"the homestead of a family shall be, and is hereby* protected from forced sale," without limiting its protective terms to instances only where sale has been made to those having knowledge of the homestead. R. S., Art. 3499 is to the same effect. However, in the present case the facts are sufficient as a matter of law to charge plaintiff in error with notice, and therefore with knowledge of the homestead character of the property involved, the existence of heirs, including an unmarried daughter and minor heirs, surviving.

The trial court awarded plaintiff in error a 3/9 interest in the property,—that is, the interest of Miss Ethel, and Grady and Russel Niblo, and this decree was unchallenged in the Court of Civil Appeals, and must be affirmed for that reason at least. The judgment also awarded plaintiff in error the improvements which he has

placed on the premises. This cannot be sustained. The improvements made by him are those of tenants in common upon the joint property, paid for in part by him and in part by the property of the estate, in the use of all or a portion of the old house which was standing upon the lots when the plaintiff in error took possession. In addition to using certain portions of the pre-existing construction, the plaintiff in error wrecked the old house, valued by the jury at $1000, and this element necessarily enters into a proper determination of the plaintiff in error's equities in the joint property. True, he has placed valuable improvements on the property, and to the extent that he has done so he may be entitled to an accounting by the other tenants in common, (Whitmire v. Powell, 103 Texas, 235, 125 S. W., 889), just as he must account to them for the value of the house destroyed and such rents as he may have collected from the joint property, after his possession and improvement; in which, of course, the right of possession and the rights of the minor heirs, if any, under the Constitution and laws, must be considered and given effect.

The Court of Civil Appeals correctly reversed that part of the judgment for improvements, but the subsequent trial with reference thereto must be had in accordance with principles of equity, and this opinion, and not with reference to the statutes cited by that court.

It is strongly insisted in the motion for rehearing that the application for the sale of the property stated that there were taxes due by the estate of Mrs. Niblo. The Court of Civil Appeals, and evidently the trial court also, found that the sale of the homestead was for the purpose of paying general creditors. Under this finding the question of sale for taxes, we think, passes out of the case. But, be that as it may, the sale of the homestead property was to payy all the debts of the estate, including those clearly not chargeable against it. The order of sale was therefore void, and conferred no rights on plaintiff in error to the homestead. Girardeau v. Perkins, 59 Texas Civ. App., 552, 126 S. W., 632; Wright v. Straub, 64 Texas, 64; House v. Phelan, 83 Texas, 595, 19 S. W., 140; Miller v. Davis, 69 Ark., 1, 64 S. W., 97.

The motion for rehearing will be overruled, but this Court will of its own motion modify the previous judgment entered by it to the extent of affirming the judgment of the Court of Civil Appeals, instead of that of the District Court.

Judgment of the Court of Civil Appeals is affirmed.