RAMÓN AVILÉS VEGA and BASILISA ARES AVILÉS, Plaintiffs and Appellants, *v.* RICARDO TORRES DÁVILA, EUGENIA k/a GEÑITA, GARCÍA, and VENTURA MANAUTOU, Defendants and Appellees.

No. R-66-28.     Decided April 1, 1969.

*Efraín Aponte Berdecía* and *Antonio Aponte Berdecía* for appellants. *Gregorio Lacot Salgado* and *Pedro Juan Alcalá* for appellees.

First Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Blanco Lugo, Mr. Justice Rigau, and Mr. Justice Ramírez Bages.

PER CURIAM: This action challenges the process of execution followed in another suit where plaintiff-appellant herein was sued for damages caused in an automobile accident.

The hearing of said suit for damages was held in the District Court, Río Piedras Part. Said court sustained the complaint against defendants Ramón Avilés Vega and his wife, and ordered them to pay to plaintiff, Ventura Manautou, the sum of $920 for damages, with costs and $100 for attorney's fees.

Defendants appealed to the Superior Court, San Juan Part, from said judgment. The Superior Court affirmed and remanded the case to the trial court for the execution of the judgment.

During the prosecution of the case at the District Court, after a motion to that effect, said court ordered the entry of a cautionary notice of attachment of a house and a lot, property of the defendants, situated in the Caparra Terrace Development, Río Piedras, Puerto Rico. After the Superior Court affirmed, the District Court, after a motion to that effect, ordered the execution of the judgment. Consequently, the marshal was ordered to attach, in execution of judgment, "property belonging to defendants which he shall proceed to

sell at public auction to the highest bidder, in a sufficient amount to satisfy the aforementioned amount of $920, the principal amount, $100 for attorney's fees, and $10 for expenses and costs of the proceeding, and in the event personal property is attached, it will be deposited with a depositary designated by (the marshal) for that purpose."

Relying on the order of attachment and on the writ issued to the marshal, plaintiff, through a list of the properties, requested the marshal of the District Court to levy and sell at public auction the house and lot property of the defendants situated in the aforementioned Caparra Terrace Development.

The auction sale was held on December 5, 1963, it being awarded to Ricardo Torres for the amount of $1,118.74. Ricardo Torres and his wife, and Ventura Manautou, are the defendants-appellees in this appeal. Manautou was the plaintiff in the original suit for damages.

On December 30, 1963, twenty-five days subsequent to the auction sale, the defendants, whose property was attached in the suit for damages, filed a motion requesting the nullity of the execution of judgment. In support thereof they alleged that in the auction sale the requirements of the law were not observed and, furthermore, they alleged that the only property possessed by the defendants and on which they had constituted their right of homestead, which by law amounts to $1,500, is the house which was auctioned. They also alleged that said sum should have been deposited in court, which was not done. In said motion defendants requested a hearing for the discussion of the same. The District Court denied said motion.

On January 14, 1964 plaintiffs-appellants Ramón Avilés and his wife (who were the defendants in the suit for damages) filed, in the Superior Court, San Juan Part, the action object of this appeal, alleging the nullity of the execution of the judgment and of the auction sale. Said

action was dismissed by the Superior Court. Appellant-spouses assign four errors, which we shall mention and discuss below.

 ■ The first assignment is to the effect that the court erred in concluding that the law does not require that a writ of execution and the order be notified to the party against whom judgment was rendered. Appellants understand that Rule 65.3 of the Rules of Civil Procedure requires that the clerk serve notice of the writs of execution and the orders of attachment.[1] He is not right.

Although Rule 65.3 provides that upon the entry in the record of copy of an order or judgment the clerk shall serve notice thereof on all the parties by mail in the manner provided in Rule 67, said rule must be read together with Rule No. 67.1, which provides as to the service of notice upon the parties. Said rule provides that every order "required by its terms to be served" shall be served. The writ of execution is not an order required to be served, whereas doing it would be superfluous, pursuant to the provisions of Rule 51, which provides on execution. Insofar as pertinent, Rule 51.1 provides that:

"The party in whose favor judgment is entered may execute the same by the proceeding fixed in Rule 51, at any time within 5 years after it becomes final. Upon expiration of that period, the judgment may be executed by leave of court, on motion of a party and notice to all parties."

And Rule 51.2 provides, in part, that: "Process to enforce a judgment or order for the payment of money and to collect the costs awarded in a judgment or order shall be a writ of execution."

As it may be seen, within the first five years the process of execution is brought by a writ of execution. It is after expiration of the first five years that motion of a party, notice

---

[1] We refer, of course, in the course of this opinion, to the Rules of Civil Procedure of 1958, as amended, except when otherwise indicated.

to all parties, and leave of court are required for the execution of judgment. As to the manner of obtaining the writ of execution, Rule 65.2, insofar as pertinent, provides the following:

"All motions and applications in the clerk's office for issuing mesne process . . . are grantable of course by the clerk; but his action may be suspended, altered, or rescinded by the court upon cause shown."

Construing provisions similar to those under consideration herein, in *Lawton* v. *Porto Rico Fruit Exchange*, 42 P.R.R. 282, 291 (1931), we stated the following:

"Furthermore, although the attachment of property to secure the effectiveness of a judgment requires an order of the court, no such requirement exists for the issuance of execution, since in none of sections from 239 to 268 of the Code of Civil Procedure, which treat of the execution of judgments, an order of court is required, except as provided in section 243 in the case of the lapse of five years without the judgment being executed if the recovery of money is not involved. The reason why leave of court is made necessary in such a case is that before the lapse of the five years no such leave is required. It is, therefore, a ministerial duty of the clerk to issue the writ of execution of the judgment in every case not covered by section 243. The clerk has power, without a previous order of the court, to issue an execution. [Citation omitted.] The issuance of a writ of execution is a ministerial act on the part of the clerk. [Citations omitted.] Therefore, an order of court directing the marshal to execute the judgment may be considered as superfluous . . . ."

In *Lawton*, the court continued to reason that as there was a judgment for the payment of money, the clerk had power to issue the writ of execution to the marshal. If the order of the court directing to execute the judgment is superfluous, we reason now, the service thereof is also superfluous.

As to the writ of execution, we find nothing in the rules in force, nor in the provisions of the Code of Civil Procedure, in force or repealed, nor in the Code of California, from

which the latter originated, nor in the case law construing them, that require that said writ be previously served upon the judgment debtor.

In our opinion it is improbable that the contrary is the intent of the rules—or before, of the Code—since such notice would have the effect of warning the debtor, giving him the opportunity to conceal or transfer property, thus thwarting the purpose of the writ of execution. Such notice is only required if over five years have elapsed after the judgment became final. Rule 51.1. In *Banco Territorial y Agrícola* v. *Marcial*, 44 P.R.R. 124, 127 (1932), we expressed our opinion as to the reason why notice and leave of the court are required after the lapse of five years.

The second assignment alleges that in the publication of notices the requirements of the law were not complied with as to the time of publication. This second contention is not right either.

Concerning the execution of judgments, among others, §§ 251 to 258 of the Code of Civil Procedure, 32 L.P.R.A. §§ 1132 to 1139, are in force. Section 251 of said Code, 32 L.P.R.A. § 1132, provides that before the sale of the property on execution a notice of sale must be published in a newspaper once a week for twenty days.[2] Construing said § 251, in *Rivera* v. *Registrar of Guayama*, 32 P.R.R. 858, 860 (1924), we stated:

"Our conclusion is that as the notice was published once a week for three consecutive weeks and more than twenty days elapsed between the date of the first publication, October 3rd, and the date of the sale, October 27th, the statute was complied with."

---

[2] Although said section deals with personal property, an Act of March 9, 1905, 32 L.P.R.A. § 1146, provided that immovable property taken by virtue of any execution or order of sale shall be sold at public auction in the same manner provided by law for the sale of personal property under execution. It was thus adopted, without discussion, in *Federal Land Bank* v. *León*, 56 P.R.R. 850 (1940).

■ These requirements were complied with in the case at bar. Notices were published on November 11, 18, and 29, and the auction sale was held on the 5th of the next month. They were published once a week, for three consecutive weeks, and 24 days elapsed between the first publication and the auction sale.

Elaborating the foregoing, in *Ramírez v. Rivera*, 48 P.R.R. 943 (1935), in which case a house was sold on execution of judgment for the payment of money, which judgment was rendered in a proceeding prosecuted under the special act for claims not exceeding $100, 32 L.P.R.A. § 3031 (Act that does not provide anything different in relation to the publication of notices of public sales), we stated at p. 946:

"As to the contention that the notices of the public sale by the marshal of the municipal court were not published during the statutory term, because 20 days had not elapsed between the first and the last publication, it is sufficient to state that the record shows that 23 days elapsed between the first notice and the sale, which is sufficient, as we have held. . . ."

■ The third error assigned is to the effect that Rule 51.5 was violated in executing real property without having previously taken steps to execute personal property. Although the complaint alleged that the judgment debtor had personal property sufficient to cover the amount of the judgment, such allegation was denied in the answer and it was barren of proof. In the presence of such a situation, the trial court could hardly consider its merits.

The fourth and last assignment is to the effect that the court erred in failing to make any conclusion with respect to the fact that homestead is exempt from attachment and that the provisions of the law relating to homestead were not considered.

■ The institution of homestead has a constitutional basis in Puerto Rico. Our Constitution provides, Art. II, § 7, that "A minimum amount of property and possessions shall

be exempt from attachment as provided by law." Said institution is more specifically defined and regulated by our ordinary legislation. Act No. 87 of May 13, 1936, as amended, which repealed the Act of March 12, 1903; 31 L.P.R.A. §§ 1851–1857. Appellees maintain that the claim of homestead should have been raised at the act of the sale, which was not done in this case. We do not agree.

How the claim of homestead in cases of sale under judgment or execution should be made is regulated by §§ 5 and 6 of said Act No. 87, 31 L.P.R.A. §§ 1855 and 1856. Section 5 governs the situation when the claim is made within the principal process of execution. In said case the claim is made by motion filed within a period of 30 days after the sale is made. Section 6 governs the situation where the claim is not established within the principal process, but when it is done by instituting a separate action, for which the law grants a term of one year. Said § 6 of Act No. 87, 31 L.P.R.A. § 1856, reads:

"In case no claim whatsoever is established before the officer in charge of the auction sale, the person entitled to the claim of homestead may institute the corresponding ordinary action within the term of one (1) year from the date on which he is notified of the sale; and the person who held the auction shall serve notice of the sale on the person entitled to said claim of homestead, by delivering to him a certified copy of the record of the auction sale within twenty (20) days from the date thereof."

In the case at bar the auction sale was held on December 5, 1963 and the complaint was filed on January 14, 1964. In paragraph No. 2 of said complaint plaintiffs allege that they have established their residence and homestead on the real property in question since the year 1959, and that the value of the same is from about $12,000 to $13,000. Of course, it was timely filed. They sued after forty days and they had a term of one year to do it. It was so decided in *R. Ruiz &*

*Co.* v. *Marcano,* 61 P.R.R. 250 (1943), where, as in the case at bar, plaintiff sued under § 6 of Act No. 87 and not under § 5 of said Act. There we stated at p. 252:

"Nineteen days after the judicial sale, Marcano, pursuant to § 6, filed suit to enforce his homestead rights, which a district court has declared in a final and unappealable judgment. Having chosen to proceed by suit under § 6 rather than by claim under § 5, the substantive rights established in § 5 were properly enforced in the said suit."

There is no doubt that the property levied belonged to appellants. Otherwise, it could not have been attached. Furthermore, the deed of sale is included in the record of the unlawful detainer proceeding. Appellants' occupancy of the property as residence was also established. The record of case No. 64-2090 on unlawful detainer at sufferance was offered and admitted in evidence without objection; and this constituted the waiver of any objection to its admission. Said record became part of the evidence and may be used as proof. McCormick, Evidence 115, 126–128 (1954).

Furthermore, in the motions of February 18 and May 18, 1966, filed by appellees requesting the eviction of appellants, it is specifically alleged that "from October 8, 1964 to the present time, defendants herein are occupying the property." In the judgment ordering the eviction, the court itself concludes that appellants "wrongfully withhold the aforementioned property against plaintiffs' express will."

■ In *Franceschi* v. *Claudio,* 51 P.R.R. 479, 487 (1937), we stated, in relation to the defendants, who bought the property from the purchaser at auction: "When the latter purchased the property, the defendant, who was the previous owner thereof, was, together with his family, in possession of the house; which fact could not be ignored by the plaintiffs, and which was in itself sufficient to give them notice and to put them upon inquiry as to whether he occupied the property under a lease or as an owner of the homestead right." The owner's occupancy of the property is notice to

all of his homestead right. *Bartold* v. *Lewandowska*, 8 N.W.2d 133; *Bank of Hoxie* v. *Graham*, 44 S.W.2d 1099; *Cline* v. *Niblo*, 8 S.W.2d 633.

The fourth error assigned was committed.

In view of the foregoing, it is proper to modify the judgment rendered by the trial court in this case to the effect of ordering the purchasers at auction to pay to plaintiffs-appellants the sum of $1,500, to which they are entitled as homestead, plus the legal interest from the date of the auction sale, and $500 for attorney's fees.

Thus modified, the judgment of January 24, 1966 rendered in this case by the Superior Court, San Juan Part, will be affirmed.