## LYNE et al. v. PANHANDLE CONST. CO. et al.

### No. 4869.

Court of Civil Appeals of Texas. Amarillo.

March 7, 1938.

Rehearing Denied April 4, 1938.

Vickers & Campbell, of Lubbock, for appellants.

Wilson, Randal & Kilpatrick and Robt. A. Sowder, all of Lubbock, for appellee Panhandle Const. Co.

Bean, Evans & Bean, of Lubbock, for appellees W. J. and John Spikes.

STOKES, Justice.

On August 15, 1919, C. J. Lyne and his wife, Jewel, became the owners of lots Nos. 11, 12, and 13, in block No. 181, of the original town of Lubbock. They afterwards separated and were divorced, after which C. J. Lyne conveyed the lots and improvements to her. The lots were contiguous and faced east on Texas avenue and the south side of lot No. 11 also abutted Sixteenth street, which extended east and west, adjoining the premises on the south. There was a five-room dwelling house, a small outhouse, and garage located on the property which constituted the homestead of C. J. Lyne and his wife until they separated, and also constituted the homestead of Jewel R. Lyne and their two minor sons until her death, which occurred on the 20th of June, 1925. The residence fronted south on Sixteenth street and was located principally on lot No. 12, but extended over on to lot No. 11, taking in a portion of that lot, and also extended north, taking in a portion of lot No. 13.

On the 13th of May, 1925, a little over a month prior to her death, Mrs. Lyne executed and delivered to the Panhandle Construction Company a paving lien on lot No. 11 to secure a portion of the cost of paving Sixteenth street in front of the premises. After the death of Jewel R. Lyne, C. J. Lyne, her former husband, and father of her two children, made application in the county court of Lubbock county for guardianship upon the estate of the minors, and continued to act as their guardian until his death, which occurred on March 7, 1931. John K. Lyne, a brother of C. J. Lyne, was then appointed guardian of the persons and estate of the minors and, while he was acting in that capacity, on April 21, 1933, appellee Panhandle Construction Company procured a judgment in the district court, establishing its debt for the paving on Sixteenth street in the sum of $1,885.87, and establishing a paving lien on lot No. 11, which judgment was certified to the probate court for observance and execution. On May 30, 1933, appellee Panhandle Construction Company made application to the probate court for an order to sell lot No. 11, and praying that the guardian be cited to show cause why such application should not be granted. The citation was served upon the guardian in Dallas county, but he took no action in response thereto, although an order had been entered directing him to sell the property to pay the indebtedness. On July 23, 1934, the construction company filed an application to have the guardian removed. Citation upon this application was not served because he could not be located. The probate court thereupon entered an order removing him as guardian and appointed R. J. Allen in that capacity who, on June 3, 1935, made application for an order to sell all three of the lots, setting up the judgment, claim, and lien of the construction company on lot No. 11, and further alleging that there was a large amount of delinquent and unpaid taxes against all of the property. The application explained to the court the situation of the improvements and alleged that it was not practical nor expedient to sell lot No. 11 separate and apart from the other two lots, and that the property could not be partitioned on account of the situation of the improvements. He further alleged in his application that the revenues from the estate were insufficient to take care of the property and pay the taxes and that the sale of lot No. 11 alone, under the circumstances, would probably not yield a sufficient amount to satisfy the delinquent taxes against the property. He alleged that he considered it would be to the best interest of the estate to sell all of the property for the purpose of paying the debts and lien against it and that the property should be sold as a unit. In response to this application, on October 2, 1935, the probate court entered an order, directing the guardian to sell the entire premises consisting of the three lots, together with all improvements. The court found that the debt of the construction company amounted to $1,885.87; that taxes were delinquent on all of the property amounting approximately to $1,000; and that none of the obligations of the estate could be paid unless the property was sold. It also found that the indebtedness of the estate exceeded the value of the property and directed the guardian to sell the property at private sale. On the day after the order was entered, the guardian filed a report of a sale to the Panhandle Construction Company in consideration of the

cancellation, release, and satisfaction of its claim and lien on lot No. 11, and its assumption of the delinquent and current taxes on all of the property, which report was approved on October 14, 1935, and on the next day the guardian executed and delivered a deed conveying the property to the purchaser.

After receiving its deed to the property, the Panhandle Construction Company filed in the Seventy-Second district court of Lubbock county a suit against R. J. Allen as guardian of the estate of the minors, and other parties not necessary to mention, for the title and possession of the premises consisting of the three lots above mentioned and the improvements located thereon, and procured judgment on February 25, 1936, which recited that R. J. Allen, guardian of the estate of Charles J. Lyne and George Lyne, the minors, appeared and announced ready for trial. No appeal was taken from the judgment nor any direct attack made thereon.

R. J. Allen, after filing his final account, was discharged as guardian on April 28, 1936, and on December following, the Panhandle Construction Company paid all taxes on the property amounting to $995.38, and then conveyed the property to appellee W. J. Spikes, who, on February 1, 1937, with his brother, John Spikes, who seems to have procured an interest in some of it, removed the residence and other improvements and placed them upon other lots in the city of Lubbock.

This suit was filed in February, 1937, by Charles J. Lyne, Jr., one of the minors who had become of legal age, on behalf of himself and as next friend for George R. Lyne, his brother, who still was a minor, against the Panhandle Construction Company, a corporation, John Dalrymple, its president, and W. J. Spikes and John Spikes, in which it was alleged that the plaintiffs were the only surviving children and heirs of Jewel R. Lyne, deceased; that the premises above described was the homestead of their father and mother and that plaintiffs, appellants here, were the owners of the property in fee simple and entitled to its use and possession. He alleged that the property was of the reasonable value of $10,000; that the guardian's sale and all of the probate proceedings and deeds were void and of no force or effect because the three lots constituted the homestead of the family prior to his mother's death; that only lot No. 11 was burdened with the paving lien and the other two lots were free and clear of encumbrance. He attacked the proceedings on the further ground that no sales bond was required of the guardian when the sale was made; alleged fraud in that all of the proceedings with reference to the sale were induced and instigated by the construction company, with the design and purpose to acquire the title for its debt and lien on lot No. 11, and that the sale was made by R. J. Allen who was not the lawful guardian in that his appointment was beyond the power and jurisdiction of the probate court because the minors, at the time, were over fourteen years of age and were not served with notice of citation of appointment and were not given an opportunity to select their own guardian. He prayed that appellants recover the title and possession of the three lots and the value of the houses and garage which had been removed therefrom, and for damages for the use of the premises.

Appellees answered by general demurrer, special exceptions, general denial, and special answer to the effect that in cause No. 6702 in the Seventy-Second district court of Lubbock county, in February, 1936, a judgment was rendered in favor of the construction company for the title and possession of the property, setting up its paving lien and all of the probate proceedings under which it acquired title, and prayed in the alternative that if plaintiffs should recover, it be subrogated to the tax lien which it had paid and that it recover the amount due on its paving lien.

The case was tried before a jury, but at the conclusion of the testimony the court instructed the jury to return a verdict in favor of the appellees, which was done, and judgment rendered accordingly, to which appellants duly excepted and gave notice of appeal to this court.

Under their first and second propositions appellants contend that the application of the guardian to sell the three lots to pay an indebtedness against lot No. 11, and the order of sale entered by the probate court, as well as the sale, confirmation, and guardian's deed, were void and beyond the powers and jurisdiction of the probate court and the guardian because the premises constituted the homestead of Jewel R. Lyne, their mother, at her death and, as such, were inherited by them. This contention is based upon

the well-established rule in this state that under our present Constitution the homestead descends to the heirs and vests as other real property upon the death of the parents and is not subject to administration. Zwernemann v. Von Rosenberg, 76 Tex. 522, 13 S.W. 485; Cline v. Niblo, 117 Tex. 474, 8 S.W.2d 633, 66 A.L.R. 916. The rule announced cannot be applied to the instant case for the reason that the property which constituted the homestead of the deceased parents of appellant was encumbered and could not have been set aside to appellants nor appropriated by them as exempt property to the exclusion of the liens against it until the encumbrances were removed. Article 3492, R. C.S.,1925; Connor Bros. v. Williams, Tex. Com.App., 112 S.W.2d 709. The paving lien was executed by Jewel R. Lyne and was a valid and subsisting lien upon a portion of the property constituting the homestead at the date of her death. It descended to appellants with that lien upon it and the probate court had exclusive jurisdiction to sell it for the payment of the debt. It is true the homestead property could not have been sold for the payment of the general debts of her estate, but that it may be sold through orders of the probate court for the payment of a debt secured by a valid lien against it and that the probate court had exclusive jurisdiction to make the sale is a rule well established in this state. Connor Bros. v. Williams, supra, and authorities there cited.

■ Appellants insist, however, that, even if the power of the probate court to sell the homestead for a debt of an ancestor secured by a valid lien be granted, yet the rule could not apply to this case for the reason that the lien covered only lot No. 11 and did not affect lots Nos. 12 and 13. The record shows the homestead was located upon all three of the lots. The residence extended over on lots Nos. 11 and 13, but was located principally on lot No. 12. The outhouse and garage were located on the premises and it is obvious the premises could not have been separated into three different segments. This being the case, we think the rule giving to the probate court authority to sell the homestead property for the payment of a debt secured by a valid lien against it would apply to the entire property. However, since it is shown that the entire property, as a unit, was burdened with a large amount of delinquent taxes which were secured by the tax lien and that these taxes were the obligation of the estate of the wards, the probate court, under proper orders, unquestionably had the power to sell the entire premises. Articles 4195 and 4195a, R.C.S.1925. The application of the guardian to sell the property fully complied with the requirements of the statute. It showed the paving obligation to be in the sum of $1,885.87 and alleged that there were delinquent taxes in the approximate sum of $1,500 against the property; set out the condition of the property with reference to the location of the improvements, and that it would be impractical to sell lot No. 11 separately. He stated in the application that he considered it to be to the best interest of the estate to sell all of the property for the payment of these obligations and, upon a hearing of the application, the probate court ordered the sale as prayed for. The proceedings seem to have been conducted in accordance with statutory provisions relative to such transactions and the sale by the guardian under the orders of the probate court were regular and in all respects sufficient to authorize the sale. The guardian executed a deed in accordance with the law and in compliance with the order of the court and we think the deed executed by him passed the title of the property to appellee, Panhandle Construction Company. These assignments are, therefore, overruled.

■ The third proposition attacks the guardian's sale on the ground that no sales bond was executed or filed as provided by law. At the time of his appointment R. J. Allen executed and filed a general bond in the sum of $500 in compliance with the order of the probate court appointing him as guardian. The order of sale directed that in the event a sum of money in excess of $250 over and above the aggregate amount of the indebtedness should be received for the property at the sale, an additional sales bond in a sum twice the amount of such excess should be executed and filed by the guardian. The consideration paid by the purchaser of the property was the cancellation of its paving indebtedness of $1,885.87 and the assumption of all taxes at that time delinquent and also the taxes for the year 1935 that had been assessed against it. This sale was approved by the court and under the provisions of article 4201 no additional bond was required. This proposition is, therefore, overruled.

Under their fourth proposition appellants contend that the sale was void because the minor, George R. Lyne, was over the age of fourteen years and he was not given an opportunity to select his guardian at the time R. J. Allen was appointed. The guardianship was originally instituted by their father, C. J. Lyne, on August 14, 1928, when the wards were ten and twelve years of age. The father died on the 7th of March, 1931, and a few days later his brother, John K. Lyne, was appointed and qualified as guardian and his tenure continued until he was removed on the 23d of July, 1934, when R. J. Allen was appointed. The wards, during the pendency of the guardianship, had reached the ages of eighteen and sixteen years, respectively, and the record does not disclose that either of them at that time or at any other time signified their choice of Allen as their guardian. The statute, article 4126, provides that a minor upon attaining the age of fourteen years may select another guardian, either of his person or estate, or both, if such minor has a guardian appointed by the court. It is further provided that such selection may be made in open court, in person, or by attorney, by making application therefor as provided by law. The question raised under this proposition is whether or not the exercise of the right of the minor to select his guardian involves the jurisdiction of the court to order a sale of the property of his estate. If, under the law, the probate court does not have jurisdiction to order a sale of property belonging to the estate of a minor over fourteen years of age until such minor has exercised his right of choosing his guardian, it would follow that the record of such proceedings must show that the guardian was selected by the ward and, if such were absent from the face of the record, the purchaser of the property would be placed upon notice of the lack of jurisdiction and any sale of property under such conditions would be void. This in effect is the position taken by appellants in this contention. We do not believe the statute has the effect contended for by them. The provision is that a minor upon attaining the age of fourteen years may select another guardian. It goes further and provides the manner in which he may exercise such privilege. He may do so by appearing in person in open court, or through his attorney, by making an application therefor as provided by law. These methods are simple. If he wishes to make such selection, the ward is relieved of all formalities and may appear in person in open court and make his wishes known to the court, whereupon it becomes the duty of the court to comply with his wishes and appoint the guardian selected by him, if the court is satisfied such person is suitable and competent. The statute does not require the court to give notice to the ward and then wait until the ward exercises his privilege of selecting a guardian, but provides that the ward may do so if he wishes. We construe its provisions as an extension to the ward who has arrived at fourteen years of age the privilege of making such selection if he desires so to do. Being such, the jurisdiction of the court to proceed with the guardianship is not involved, and a sale made by a guardian who has not been so selected by the ward, but appointed by the court without such selection in a pending guardianship, is, so far as that matter is concerned, valid and binding.

The Supreme Court of Michigan in the early case of Palmer v. Oakley, 2 Doug. 433, 47 Am.Dec. 41, expressed a view contrary to that which we have adopted in regard to the right of such a minor to select his guardian, but the statute of Michigan at that time was entirely different from the terms of our statute and the difference between the two impelled the conclusion reached by the court in that case. The title of the Michigan statute was, "An act empowering the judge of probate to appoint guardians to minors." Laws of Territory 1827, p. 57. The act authorized the probate court to appoint guardians for minors under fourteen years of age, and allowed the appointment by the court of guardians chosen by minors who were more than fourteen years of age. It will be seen that the power of selecting the guardian, in all instances where the minors were over fourteen years of age, was placed in the minor and not in the court. The court was authorized to appoint only such persons as were selected by the minor. Because of the wording of the statute, the Supreme Court of Michigan held that the court was without power to appoint such a guardian and that a sale of property made by one selected by the court without regard to the wishes of the minor was void. It can easily be seen that the matter of appointing a guardian under a statute, such as the Michigan statute, went directly to the jurisdiction of the court. Under our statute, we have an entirely different situation and the basis of the holding of the Supreme Court of Michigan in the case cited does

not prevail with us. We construe our statute as merely extending to the minor a privilege and the failure of the record to disclose he has exercised that privilege and made choice of his guardian does not vitiate a sale made by the guardian under proper orders of the court. We, therefore, do not accede to the contention of appellants in this respect and this assignment is overruled.

 The sixth, seventh, and eighth propositions complain of the ruling of the trial court in sustaining objections to evidence offered by appellants concerning the value of the property and of the rents and its use after the sale and to the ruling of the court in sustaining certain exceptions to allegations made by them concerning fraud in the proceedings in the probate court. The only allegations made by appellants concerning fraud were to the effect that the Panhandle Construction Company had instigated the movement in the probate court to have the property sold in satisfaction of its claim and had procured the court to appoint R. J. Allen as guardian, arranged for making his bond, paid the costs of the proceedings, and its attorneys had prepared the application, reports, and orders that were necessary to complete the sale of the property. These rulings of the court were made upon motions to strike the evidence and sustain the exceptions after the testimony was completed. The evidence showed Charles J. Lyne, Jr., had arrived at his majority and that George R. Lyne was then in the United States Army and located at El Paso. There is nothing in the record or the evidence that would warrant the conclusion that the Panhandle Construction Company attempted to take advantage of appellants, nor that it had any designs other than the collection of its debt. John K. Lyne, the uncle of appellants and guardian of their estate, could not be found at the time the movement for the sale of the property was resumed by the construction company. We do not find anything in the record which warrants a charge of fraud and, in our opinion, the trial court ruled correctly on these matters.

Appellants make a further contention that the judgment in the suit brought in the district court by the construction company against the guardian, R. J. Allen, and others was void as to appellants because they personally were not made parties thereto. We do not think appellants were necessary parties to that suit. The order of the probate court directing the sale of the property and the proceedings had and deed executed under them passed the title of the property to the Panhandle Construction Company, the purchaser at the guardian's sale. As far as appellants were concerned, the suit in the district court was not necessary. The construction company may have had a cause of action against the other defendants in that suit, which justified them in instituting it, but whether there were any grounds to support it or not, it does not affect the controversy involved in this appeal because, as we have stated, the title to the property had already vested in the purchaser at the probate sale.

We have examined all of the assignments of error and propositions presented by appellants, and finding no error presented by the record, the judgment of the trial court will be affirmed.