## MASTERSON et al. v. WINGATE et al.
### No. 11166.

Court of Civil Appeals of Texas. Galveston.
April 24, 1941.

Rehearing Denied June 12, 1941.

Lynne Tamborello and Billye N. Russell, both of Houston, and Greenwood, Moody & Robertson, of Austin (on motion for rehearing) for appellants.

W. P. Hamblen and Phil D. Woodruff, both of Houston, for appellees.

CODY, Justice.

This suit was brought by appellants, who claim title to a certain 128-acre tract of land in Harris County as the legatees of R. K. Macomb, to recover title and possession thereof from appellees. Appellants first pled a formal suit in trespass to try title against appellees. Appellants then pled that on February 19, 1923, one William Denny purporting to act as independent executor of the Estate of R. K. Macomb, deceased, conveyed the 128-acre tract to one R. R. Kropp, and that said Kropp thereafter on February 28, 1923, conveyed a portion of the land to Frank Helenberg and Andrew Bucsay jointly, and upon the same day the said Kropp conveyed a portion of the land to A. R. Hamblen, W. P. Hamblen, Philip Tharp, and George Tharp, jointly. Appellants further alleged that each of said purported conveyances were wholly void, but cast clouds upon appellants' title to the 128-acre tract, and requested such clouds be removed.

The answer of appellees consisted of a general demurrer, a plea of not guilty, and general denial; and plead the statutes of limitations of 3, 5, 10 and 25 years, and by way of cross-action sued appellants in formal trespass to try title for the same 128-acre tract of land. To said cross-action appellants pled not guilty, and other defenses not necessary to detail.

It is not disputed that R. K. Macomb is the common source of title.

On August 26, 1920, at which time he stated in his will that he was past 76 years of age, R. K. Macomb executed his said last will and testament. In the first paragraph of this will, omitting the formal part, the will provided: "I desire that my just debts be paid out of my estate, by my Executor within a reasonable time after my demise." By the second paragraph of the will the testator devises the 128-acre tract in four different parcels, as follows: One-fourth to Everett L. Masterson, only living child of testator's deceased daughter, Susan; one-fourth to Lydia B. Macomb, only daughter of testator's deceased son, T. W. Macomb; one-fourth to Alice Grace Millican, a daughter of deceased, and one-fourth to the heirs of Margaret Lester, a deceased daughter of the testator.

It was proven that on November 16, 1916, by a written lease, R. K. Macomb leased the 128-acre tract to L. B. Masterson for annual rental at the rate of $50. Thereafter, in November of 1921, testator died. And his will was admitted to probate on March 18, 1922, at which time letters were issued to William Denny as independent executor, he having been nominated as such in the will.

It was shown by the inventory and appraisement that the testator had no community estate, and that his separate estate consisted of $5.25, cash, and the 128-acre tract. The list of claims consisted of the following:

State and County taxes for 1921... $ 25.00
Crosby District School taxes...... 10.00
Funeral expenses .............. 150.00
Unsecured note, with accumulated
  interest .................... 625.00
Note secured by 25 acres out of 128
  acres ...................... 110.00

And thereafter on February 19, 1923, as above indicated, the independent executor conveyed the 128-acre tract to R. R. Kropp for $1,200. This deed, appellants contend, was absolutely void. This contention they base upon the claim that the 128-acre tract was the homestead of testator, and thus exempt by law from liability for the payment of testator's debts, and being thus exempt, the independent executor was without power to sell the 128-acre tract, which testator had devised to appellants, in order to pay testator's debts.

In answer to special issues the jury found that the 128-acre tract was testator's homestead from November 16, 1916 (the date that testator leased it), until the date of his death; that testator was using the 25-acre tract (being out of the 128-acre tract and which was mortgaged by him shortly before his death) as a home at the time of his death; and that the testator did not intend, by leasing the whole of the

128-acre tract in 1916 to abandon it as a homestead.

The court granted appellees' motion for judgment notwithstanding the jury's verdict. This action we believe to be correct. It is unnecessary to rule on appellees' contention that the evidence showed as a matter of law that testator had abandoned the 128-acre tract as a homestead because, whether the 128-acre tract was testator's homestead at the time of his death or not, the independent executor was authorized under the facts of this case to execute and deliver the deed to Kropp. And for the purposes of this opinion we will assume, without so holding, that the 128-acre tract was the homestead of testator at the time of his death.

The independent executor was authorized to sell the 128-acre tract, which was devised by testator to the respective appellants in four respective parcels for two reasons:

1. Because the independent executor was authorized and directed by the testator to pay testator's just debts out of his estate, and the 128-acre tract was the only resource of the estate out of which said debts could be paid (subject to the right of testator's legatees to pay off such debts and take their legacies).

2. Because the independent executor was authorized by law to sell the 128-acre tract to pay taxes, and was likewise authorized to sell the 25-acre tract out of the 128-acre tract to pay off the mortgage thereagainst (subject to the right of testator's legatees to pay off such indebtedness and take legacies).

The testator was a widower. He owned the 128-acre tract in fee simple—as his separate estate. He had the power, whether he was the head of a family or not, to subject the 128-acre tract or any portion thereof to the payment of his debts by mortgaging it. Smith v. Von Hutton, 75 Tex. 625, 13 S.W. 18; Spencer v. Schell, 107 Tex. 44, 46, 173 S.W. 867. If testator had the legal power to subject the 128-acre tract or any portion thereof to the payment of his debts by placing a mortgage thereon, he necessarily had the legal power to subject it to the payment of his just debts by authorizing and directing his independent executor to pay said debts out of said tract. It being quite clear that testator could empower and direct his independent executor to pay his just debts out of the 128-acre tract, it remains to be determined from the will by construction if he exercised such power.

"It is fair to assume that testator knew the condition of his business, and was in a position to form some idea as to what would be necessary to be done by the executors in the administration of his estate; and he having, in the will, which speaks as of the date of his death, conferred the power to sell to pay his debts, it would appear against reason not to assume, at least prima facie, that there were debts to support such power." Applying this holding of the Supreme Court in Terrell v. Mc-Cown, 91 Tex. 231, 254, 43 S.W. 2, 12, to the facts of this case, we must assume that testator knew that in order for his executor to follow the direction given him to pay testator's just debts out of his estate, the executor would necessarily be forced to resort to the 128-acre tract. The proof showed that testator left debts of a thousand dollars, and the estate which he left, and out of which he ordered such debts to be paid, other than the 128-acre tract, consisted of but $5.25. While it is true that testator devised this 128-acre tract to the legatees named in his will it is equally true that he devised it subject to his debts. Of course, it may be that testator could have given the 128-acre tract to his relatives and defeated his creditors in the collection of their just debts. But it would seem that he considered this as contrary to the precept to be just before being generous. In any case, it was within the power of testator to subject the 128-acre tract to administration in the hands of an independent executor for the purpose of paying his just debts. And testator did plainly subject his estate, consisting virtually of said 128-acre tract, to administration by an independent executor for payment of his just debts. The deed executed by the independent executor, even if we hold that it is established by proof that it was so executed in order to obtain money to pay testator's just debts (as distinguished from secured debts), was not absolutely void. The question is not before us as to whether the deed was voidable, and we have not held whether it is or is not voidable.

The independent executor's deed was not absolutely void, however, for another reason. Included among the just debts left by testator were secured debts also; these secured debts, as appears above, totalled $35 taxes against the entire 128-acre tract and $110 against the 25-acre tract. Conceding

that the 128-acre tract was proved to be a homestead, it was not exempt from a foreclosure and sale in order to enforce the payment of such secured indebtedness. And it cannot be contended that testator's legatees took title to the 128-acre tract free of liability thereagainst to pay off such secured indebtedness. Lynne v. Panhandle Const. Co., Tex.Civ.App., 114 S.W.2d 1195. Consequently testator's independent executor was empowered by the will to administer on the estate, and on this land for the purpose of paying off the indebtedness secured thereagainst. Hutcherson v. Hutcherson, Tex.Civ.App., 135 S.W.2d 757; Carlton v. Goebler, 94 Tex. 93, 58 S.W. 829; Simpkins on Administration of Estates, p. 115.

Since the independent executor had the power to sell the 128-acre tract in order to discharge the secured debts thereagainst, and the proof showed there were secured debts against it, such sale cannot be held to be absolutely void. It may be that it was not necessary to sell the entire 128 acres in order to secure the money to discharge the secured debts. In any case the sale of the 128 acres was made by testator's independent executor, a man to whom testator preferred to entrust the administration of his estate rather than to have the probate court administer it. If the sale ought to be set aside because it was so very improvident or for any other cause, the sale then would have been merely voidable, and not absolutely void. What we have just stated is not to be construed as implying that the sale was voidable.

█ It is appellants' contention that under the authority of that line of holdings represented by Cline v. Niblo, 117 Tex. 474, 8 S.W.2d 633, 66 A.L.R. 916, the deed executed by testator's independent executor must be held to be void. Boiled down, the Niblo case seems to hold that as the homestead is not subject to the payment of decedent's debts, it is not subject to the jurisdiction of the probate court in an administration on such decedent's estate, and therefore it was beyond the power of the probate court to order the homestead sold for the purpose of paying the debts generally of the estate, inclusive of taxes against the homestead. It is obvious that the Niblo case is not in point. When an administrator considers it proper to sell property belonging to the estate, he must file his application therefor giving the purposes for which the sale is to be made. If in his application he declares the purpose of selling the exempt homestead in order to pay debts for which it is not liable he is undertaking to stretch the probate court's jurisdiction to include administering on a homestead. If the application is granted, and the homestead is ordered sold for the payment of debts generally, such order is beyond the jurisdiction of the probate court, and a nullity. But when an independent executor sells a homestead against which there is secured indebtedness, the purchaser is entitled to presume that such personal trustee of the testator will properly apply the proceeds derived from such sale, and such purchaser is not bound at his peril to see to it that the independent executor properly applies the proceeds of such sale. The principle which controls in such case is thus stated in Blanton v. Mayes, 72 Tex. 417, 10 S.W. 452, 454:

"Looking to the evidence, there was no error in that part of the court's charge which informed the jury that the existence of indebtedness on the part of the estate, at the time the executor sold to appellee, would confer on the former the power to make the sale; for the indebtedness shown was all such as would confer on the executor the power to sell. * * *

"Such evidence would have been admissible for the purpose of showing that neither the estate of Schlutter, nor the beneficiaries under his will, ever received benefit from the money paid to Howard by appellee, but as the case was disposed of became unimportant; for, in order that appellee should be entitled to the land under his purchase from the executor, it was not necessary that he should show that the latter properly appropriated the money paid by him for the land. It was sufficient that he showed a state of facts that gave the executor power to sell."

█ If, as appellants contend, it was proved that testator's independent executor applied the purchase price received for the sale of the 128-acre tract to the payment of debts for which it was not liable, that does not concern the purchaser, nor invalidate his purchase. His concern is merely that he show "a state of facts that gave the executor power to sell."

Without further extending this opinion we hold that the trial court did not err in rendering judgment for appellee; the judgment should be affirmed, and it is so ordered.

Affirmed.