**Affirmed and Opinion Filed January 11, 2023**



**In The**

**Court of Appeals**

**Fifth District of Texas at Dallas**

_____

**No. 05-21-00047-CV**

_____

**STEVEN K. TOPLETZ, Appellant**

**V.**

**RAYGAN WADLE, AS INDEPENDENT EXECUTOR OF THE ESTATE**
**OF LYNDA WILLIS, Appellee**

**On Appeal from the 416th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 416-03100-2020**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Pedersen, III, and Nowell
Opinion by Justice Partida-Kipness

Appellant Steven K. Topletz appeals the trial court's orders granting appellee's motion for summary judgment on Topletz's bill of review and ordering sanctions against his counsel. We affirm.

## BACKGROUND

Although this appeal relates to the denial of a bill of review filed in 2020 by Topletz, the origins of the dispute go back to 2004 with the formation of a limited partnership to engage in real estate development. Topletz's actions and omissions within that enterprise ultimately led to a 2012 lawsuit filed by Lynda Willis on behalf

of herself and the limited partnership. An adverse judgment was rendered against Topletz in 2015. Willis's efforts to collect on that judgment and Topletz's resistance to those efforts ultimately brought the underlying case to where it is today. A brief history of the parties' interactions prior to the 2012 Lawsuit is necessary to properly address the parties' appellate arguments. We, therefore, begin there before providing the procedural background of the dispute that is the subject of this appeal.

### A. The parties' business relationships

Lancaster Bluegrove, L.P. (the Partnership) was formed on February 28, 2004, to purchase and develop real property for resale. Andante Development, Inc. (Andante) was the general partner and owned 1% of the Partnership. Lynda Willis and Andante Development of Nevada, Inc. (Andante Nevada) were limited partners who each owned 49.5% of the Partnership. Topletz was the president and sole shareholder of Andante and Andante Nevada.

The Partnership acquired approximately 454 acres in Lancaster, Texas (the Bluegrove Property) to develop for resale. In 2004, Willis wired Topletz $304,475.93 to purchase the first tract in the Bluegrove Property. When purchased, the Bluegrove Property was owned free and clear of any liens or encumbrances. Unbeknownst to Willis, Topletz took several actions beginning in July 2005 that encumbered the Bluegrove Property and, by extension, Willis's investment in the property and potential profits from its future sale. Those encumbrances included two loans obtained by the Partnership through Andante and Topletz totaling

$567,805.00. The loans were obtained in July 2005 and July 2006 and secured by liens against the Bluegrove Property. Andante did not inform or otherwise notify Willis of either of the loans.

Lancaster Cub Creek, L.P. (Cub Creek) was formed on December 22, 2005. Like the Partnership, Cub Creek was formed to purchase and develop real property for resale. Willis was not a partner in Cub Creek. Andante was the general partner owning 1% of Cub Creek, and Andante Nevada was the sole limited partner owning 99%. Prior to 2007, Cub Creek purchased approximately 289 acres in Lancaster, Texas (the Cub Creek Property). To make the purchase, however, Cub Creek borrowed money from Inwood Bank secured by a lien and deed of trust in favor of Inwood Bank.

When Cub Creek sought to obtain an extension and refinance of the Cub Creek Property, Andante caused the Partnership to pledge the Bluegrove Property and the Partnership's equity in the Bluegrove Property as security for a loan refinance from Inwood Bank to Cub Creek. Again, Andante did not inform or otherwise notify Willis of those transactions.

Then, in 2009, Topletz marketed and sold the Bluestone Property and Cub Creek Property in a single transaction that closed on September 1, 2009. Like the prior transactions, Andante did not inform or otherwise notify Willis of the sale.

At the time of the sale, the Bluegrove Property was encumbered by two loans totaling $523,016.85 (the Bluegrove Loans), and Cub Creek was encumbered by

–3–

four loans totaling $3,398,990.88 (the Cub Creek Loans). After the sale, there was a net due from seller of $941,595.37 which was paid by Topletz. The Partnership's equity was then used to pay down the Cub Creek loan to the benefit of Cub Creek, Andante, Andante Nevada, and Topletz. The portion of the sales price attributable to the Bluegrove Property was $911,978.16. Willis's share of the proceeds should have been 49.5% of Bluegrove's net proceeds. Unfortunately, the Partnership did not realize any money from the sale and Willis received no distributions from the sale despite considerable equity in the Bluegrove Property.

### B.     The 2012 Lawsuit

On October 25, 2012, Willis sued Topletz[1] for breach of fiduciary duty, fraud, and breach of contract in the 416th District Court of Collin County (the 2012 Lawsuit). She sued in her individual capacity and derivatively for the Partnership. Willis's individual fraud and breach of fiduciary duty claims were based on Topletz's use of the Bluegrove Property as collateral for the Cub Creek loan, sale of the Bluegrove Property in combination with the Cub Creek property, and failure to disclose those acts. Willis alleged those actions benefited Topletz and Cub Creek to the detriment of both Willis and the Partnership.

The Collin County trial court held a bench trial and rendered judgment against Topletz on August 10, 2015 (the 2015 Judgment). The court awarded the Partnership $344,951.58 in damages plus prejudgment interest and awarded Willis individually

---

[1] Willis also brought claims against other parties who are not involved in this appeal.

$304,475.93 in damages plus prejudgment interest, $100,000 in exemplary damages, attorney's fees of $280,713.34, and conditional appellate fees. The 2015 Judgment included the trial court's determination that the trial court had jurisdiction over the parties and the subject matter of the case.

The trial court also issued findings of fact and conclusions of law. The trial court concluded Topletz made several misrepresentations regarding the Bluegrove Property. The court also concluded Willis joined the partnership, invested significant funds, and continued in the partnership in reliance on Topletz's misrepresentations and failure to disclose material information. Those misrepresentations included that the land was to be purchased in cash and kept free of encumbrances or debts, and the Bluegrove Property was in good financial condition because its loan to value ratio was desirable compared to that of Cub Creek. Similarly, the trial court concluded Adante failed to disclose material information to Willis, including the intention to encumber the Bluegrove Property, that loans were obtained and secured by the Bluegrove Property, the purpose of the loans or what the funds were to be used for, and Andante's intention to pledge the Bluegrove Property for Cub Creek loans and sell the property and use the proceeds of the sale to pay off the Bluegrove Loans and the Cub Creek Loans. The trial court concluded Willis relied on Andante and Topletz's representations and failures to disclose material information concerning the partnership and was damaged as a result. That damage included out-

of-pocket damages of the $304,475.93 Willis invested to purchase the first tract of the Bluegrove Property.[2]

## C.    Post-judgment collection efforts

Topletz did not appeal the 2015 Judgment and did not pay the damages awarded to Willis. Willis hired counsel to begin collection efforts against Topletz for the damages awarded to her individually. Willis's counsel served extensive post judgment discovery on Topletz and filed a motion to compel Topletz to respond to the discovery and produce responsive documents. Willis passed away before the motion to compel hearing. After her estate was probated, the independent executor of her estate, appellee Raygan Wadle, continued Willis's efforts to collect on the portions of the 2015 Judgment rendered in favor of Willis individually.

The trial court heard the motion to compel and ordered Topletz to produce various documents. When Topletz did not comply with the order compelling production, Wadle filed a motion for contempt against Topletz. The trial court heard the motion for contempt and signed a Judgment for Contempt on March 18, 2019 (the 2019 Contempt Judgment). The trial court ordered Topletz be held in contempt of court and confined to the county jail of Collin County until he complied with the discovery order. Topletz sought relief from the 2019 Contempt Judgment by filing petitions for writs of habeas corpus in this Court, the Texas Supreme Court, and the

---

[2] As to the Partnership, the trial court concluded Topletz reduced his liability under his guaranty of the Cub Creek loans by the equity and value of the Bluegrove Property. The court calculated that unwarranted benefit as totaling $344,951.58, which is the amount awarded to the Partnership in the 2015 Judgment.

United States District Court for the Eastern District of Texas. Although the habeas petitions were denied, Topletz still did not comply with the order compelling production.

### D. Topletz's bill of review

On February 28, 2020, Topletz filed a bill of review in the 193rd Judicial District Court of Dallas County challenging the 2015 Judgment. He argued the 2015 Judgment was void because the trial court did not have subject matter jurisdiction over the Partnership. Topletz alleged the Texas Secretary of State cancelled the Partnership's existence as a legal entity on July 15, 2009. He maintained the Partnership lacked standing to bring the 2012 Lawsuit, and the Collin County court lacked subject matter jurisdiction over the Partnership because more than three years had elapsed between the cancellation of the Partnership's existence and the filing of the 2012 Lawsuit. *See* TEX. BUS. ORG. CODE § 11.356(a)(1) ("the terminated filing entity continues in existence until the third anniversary of the effective date of the entity's termination only for purposes of: (1) prosecuting or defending in the terminated filing entity's name an action or proceeding brought by or against the terminated entity; . . ."). Topletz had not previously raised the issue of jurisdiction in his post-judgment or appellate filings following the 2015 Judgment.

Wadle moved to transfer the bill of review action from Dallas County to the 416th Judicial District Court of Collin County. Wadle included a request for sanctions against Topletz and his counsel within the motion to transfer. The Dallas

County court granted the motion to transfer on June 10, 2020, and ordered the case transferred to the 416th Judicial District Court of Collin County. Once back in Collin County, Wadle filed a motion for summary judgment on Topletz's bill of review, and Topletz filed a competing motion for summary judgment. Wadle also supplemented the request for sanctions previously included in his motion to transfer.

On March 11, 2021, the trial court signed an order denying Topletz's motion for summary judgment, granting Wadle's motion for summary judgment and denying Topletz's bill of review, and ordering Topletz to take nothing on his claims against Wadle. On April 13, 2021, the trial court signed an eight-page order granting Wadle's request for sanctions and rendering sanctions against Topletz's counsel, Austin Champion. Those orders are the subject of this appeal.

## STANDARDS OF REVIEW

We review orders granting summary judgment de novo. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). A party moving for traditional summary judgment bears the burden of showing that no genuine issue of material fact exists and that she is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). To determine if the non-movant raises a fact issue, we review the evidence in the light most favorable to the non-movant, crediting favorable evidence if reasonable jurors could do so, and disregarding contrary evidence unless reasonable jurors could not. *Gonzalez v. Gonzalez*, No. 05-16-00238-CV, 2017 WL 3599773, at *1 (Tex. App.—

Dallas Aug. 22, 2017, no pet.) (mem. op.) (citing *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009)).

We review a sanctions order for abuse of discretion. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007). We will overturn a trial court's imposition of sanctions only when it is based on an erroneous view of the law or a clearly erroneous assessment of the evidence. *Home Owners Funding Corp. of Am. v. Scheppler*, 815 S.W.2d 884, 889 (Tex. App.—Corpus Christi–Edinburg 1991, no writ); *see also Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 405 (1990). We must indulge every legal presumption in favor of the trial court's ruling and view the evidence in the light most favorable to that ruling. *Hatteberg v. Hatteberg*, 993 S.W.2d 522, 526 (Tex. App.—Houston [1st Dist.] 1994, no writ). A mere error in judgment by the trial court does not constitute an abuse of discretion. *Bradt v. Sebek*, 14 S.W.3d 756, 761 (Tex. App.—Houston [1st Dist.] 2000, pet. denied). Further, "[t]he mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred." *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985).

## ANALYSIS

In two issues, Topletz challenges the March 11, 2021 summary judgment order denying his bill of review and the April 13, 2021 sanctions order.

## I. The Summary Judgment Order Denying the Bill of Review

In his bill of review, Topletz argued the 2015 Judgment was void because the 2012 Lawsuit was filed more than three years after the Texas Secretary of State terminated the Partnership's existence. According to Topletz, the trial court was without jurisdiction to render judgment for the Partnership as a result of its termination. Topletz also contended the Partnership's termination status deprived the trial court of jurisdiction over Willis's individual claims because those claims and damages were merely derivative claims arising from and interwoven with the Partnership and its claims. Central to Topletz's bill of review was evidence of the date of the Partnership's termination. That evidence was not before the trial court at the time it rendered the 2015 Judgment.

In the motion for summary judgment, Wadle asserted several bases for denying the bill of review as a matter of law. First, Wadle argued the bill of review was time-barred as a direct attack because it was filed more than four years after rendition of the 2015 Judgment, and Topletz did not plead or prove the required element of extrinsic fraud. Next, Wadle contended a collateral attack on the 2015 Judgment failed as a matter of law because the jurisdictional recitals in the 2015 Judgment showed the trial court had jurisdiction over the claims and parties, and extrinsic evidence could not be reviewed to contradict those jurisdictional recitals. Further, Wadle maintained the 2015 Judgment was not void as to Willis because she asserted claims against Topletz for fraud and breach of fiduciary duty that were not

interconnected with the Partnership's claims because she suffered harm in her individual capacity and separate from her interest in the Partnership. Wadle also asserted that Topletz's arguments were barred by principles of estoppel and res judicata because he failed to raise the issue of lack of jurisdiction in any post-judgment proceeding or in documents filed in connection with Wadle's efforts to collect on the 2015 Judgment. Similarly, Wadle argued Topletz could not maintain a bill of review because he participated in the 2015 trial.

On appeal, Topletz insists none of the grounds asserted by Wadle supported the trial court's summary judgment order. As in the bill of review, Topletz relies on the extrinsic evidence of the Partnership's termination date to support his arguments that the 2015 Judgment was void. Wadle, in response, maintains we may not look to that extrinsic evidence because the bill of review was a collateral attack on the 2015 Judgment and extrinsic evidence may not be used to declare a judgment void that facially shows the trial court's jurisdiction over the claims and parties. We agree with Wadle.

**A.    The bill of review was a collateral attack on the 2015 Judgment.**

A bill of review is an equitable proceeding brought by a party seeking to set aside a prior judgment that no longer remains subject to challenge by a motion for new trial or appeal. *Caldwell v Barnes*, 154 S.W.3d 93, 96 (Tex. 2004) (per curiam). A bill of review, when properly brought, is a direct attack on a judgment. *Fender v. Moss*, 696 S.W.2d 410, 412 (Tex. App.—Dallas 1985, writ ref'd n.r.e.). A direct

attack seeks to change a former judgment and secure a corrected one. *Austin Indep. Sch. Dist. v. Sierra Club*, 495 S.W.2d 878, 881 (Tex. 1973). But when a bill of review fails as a direct attack, it may instead constitute a collateral attack. *Fender*, 696 S.W.2d at 412; *Pursley v. Ussery*, 937 S.W.2d 566, 568 (Tex. App.—San Antonio 1996, no writ).

A collateral attack does not attempt to secure a corrected judgment. *Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005). Instead, it seeks to avoid the effect of the former judgment. *PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 272 (Tex. 2012). Only a void judgment may be attacked collaterally. *Browning*, 165 S.W.3d at 346. A judgment is void when "the court rendering judgment had no jurisdiction of the parties or property, no jurisdiction of the subject matter, no jurisdiction to enter the particular judgment, or no capacity to act." *PNS Stores*, 379 S.W.3d at 272 (citation omitted).

A judgment may be challenged as void through a direct attack or a collateral attack. *PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 271 (Tex. 2012). Generally, absent a showing of extrinsic fraud, a petition for bill of review must be filed within four years of the judgment or order sought to be set aside. *Id.* at 275. "After the time to bring a direct attack has expired, a litigant may only attack a judgment collaterally." *Id.* at 271–72. Here, Topletz filed the bill of review more than four years after the 2015 Judgment. Accordingly, his only means for attacking the 2015

Judgment as void was a collateral attack. *See id.* at 271. We conclude the bill of review action constituted a collateral attack of the 2015 Judgment.[3]

### B. Consideration of extrinsic evidence

Having concluded the bill of review was a collateral attack, we must next decide what evidence may be considered to determine whether the 2015 Judgment was void. This is the crux of the parties' dispute on appeal. Topletz insists the trial court erred by refusing to consider the July 15, 2009, cancellation of the Partnership's registration when deciding whether the 2015 Judgment was void. Wadle maintains the cancellation date constitutes extrinsic evidence the trial court was not permitted to consider when analyzing the bill of review. Our resolution of this question will determine how we must proceed in our analysis and is dispositive.

This Court's review of a collateral attack is limited to whether the record affirmatively and conclusively negates the existence of jurisdiction—not whether the trial court otherwise erred in reaching its judgment. *In re Blankenship*, 392 S.W.3d 249, 255 (Tex. App.—San Antonio 2012, no pet.). This Court presumes the judgment is valid. *PNS Stores*, 379 S.W.3d at 273. But a jurisdictional defect displaces that presumption. *Alfonso v. Skadden*, 251 S.W.3d 52, 55 (Tex. 2008) (per curiam). The record affirmatively demonstrates a jurisdictional defect sufficient to void a judgment when it establishes the trial court lacked subject-matter jurisdiction

---

[3] Topletz's counsel conceded at oral argument that his bill of review action was a collateral attack of the 2015 Judgment.

–13–

over the suit. *PNS Stores*, 379 S.W.3d at 273. The "record" to be reviewed in a collateral attack is limited to the record before the trial court at the time the trial court rendered the challenged judgment. *See Crown Bay Mgmt., LLC v. Surface Works, Inc.*, No. 02-21-00025-CV, 2022 WL 247569, at *3 (Tex. App.—Fort Worth Jan. 27, 2022, no pet.) (mem. op.) ("Crown Bay must establish that the default judgment was void based on the record as it stood at the time the default judgment was rendered. Accordingly, any evidence adduced in Crown Bay's collateral attack—in connection with its postjudgment motion to dissolve the writ as an intervenor—is not considered."). It is unsurprising that extrinsic evidence may generally not be considered when a party collaterally attacks a judgment as void. *Holloway v. Starnes*, 840 S.W.2d 14, 18 (Tex. App.—Dallas 1992, writ denied) ("In a collateral attack, extrinsic evidence may not be used to establish a lack of jurisdiction."); *Crown Bay Mgmt.*, 2022 WL 247569, at *2 ("We may not consider extrinsic evidence in determining the affirmative presence of a jurisdictional defect.").

Because extrinsic evidence generally cannot be considered, "[a] collateral attack fails if the judgment contains jurisdictional recitals, even if other parts of the record show a lack of jurisdiction." *In re D.L.S.*, No. 05-08-00173-CV, 2009 WL 1875579, at *2 (Tex. App.—Dallas July 1, 2009, no pet.) (mem. op.). Indeed, "jurisdictional recitals in a judgment that is regular on its face import absolute verity and can be attacked only directly, not collaterally." *Id.*

Here, the 2015 Judgment explicitly states the trial court found it had jurisdiction over the parties and subject matter of the case. To challenge that recital, Topletz was required to bring a direct attack of the 2015 Judgment. *See In re D.L.S.*, at *2. As we concluded above, however, Topletz's bill of review is a collateral attack of the 2015 Judgment because it was filed more than four years after the judgment was signed. We conclude the 2015 Judgment shows on its face that the trial court had jurisdiction of the parties and claims. We are, therefore, barred from considering extrinsic evidence adduced by Topletz in his collateral attack. *Id.*

Despite his concession that the bill of review was a collateral attack on the 2015 Judgment and the jurisdictional recitals in the 2015 Judgment, Topletz nonetheless urges us to consider extrinsic evidence presented by him in the bill of review. Namely, he insists evidence that the Partnership was terminated more than three years before the 2015 Judgment renders the judgment void. Topletz argues we can look to that extrinsic evidence here because this case falls under the "no possible power to act" exception to the no-extrinsic-evidence rule and allows review of extrinsic evidence. In support of that argument, Topletz first cites *In re D.S.*, 555 S.W.3d 301, 317 (Tex. App.—Dallas 2018), *rev'd sub nom, Interest of D.S.*, 602 S.W.3d 504 (Tex. 2020). In *D.S.*, this Court explained the exception as follows:

> Void judgments may be attacked collaterally with extrinsic evidence when the court "under the very law of its creation," does not have "any possible power" to decide the case. Extrinsic evidence also may be used to collaterally attack a judgment when a statute terminating a court's jurisdiction "firmly established ... the public policy of this state."

–15–

*In re D.S.*, 555 S.W.3d at 317 (internal citations omitted). *D.S.* involved review of a bill of review seeking to overturn an agreed order terminating a father's parental rights. *Id.* at 308. Father signed an affidavit for voluntary relinquishment of his parental rights to his daughter, D.S., and, based on the affidavit, the trial court signed an agreed order terminating Father's parental rights to D.S. *Id.* Father subsequently filed two petitions for bill of review, challenging the agreed order of termination and the property division in the agreed final decree of divorce. *Id.* In an amended petition for bill of review in the termination case, Father asserted the termination order was void because Massachusetts was D.S.'s home state on the date her mother commenced the divorce action and, therefore, the UCCJEA deprived the Texas trial court of jurisdiction to make an initial child custody determination regarding D.S. *Id.* The trial court denied both petitions for bill of review, and father appealed. *Id.* On appeal, father argued in part that the order terminating his parental rights to D.S. is void, and the trial court erred by determining it could not consider extrinsic evidence in considering whether it had jurisdiction over the termination proceeding. *Id.* at 306.

In its analysis, the panel that decided *D.S.* noted the record of the termination proceeding did not affirmatively demonstrate the trial court's lack of subject matter jurisdiction under the UCCJEA. *D.S.*, 555 S.W.3d at 318. As such, the panel recognized it "must presume the judgment is valid, and, absent an applicable exception to the no-extrinsic-evidence rule, Father may not rely on extrinsic

evidence to prove otherwise." *Id.* (first citing *York v. State*, 373 S.W.3d 32, 41 (Tex. 2012); then citing *Alfonso v. Skadden*, 251 S.W.3d 52, 55 (Tex. 2008) (per curiam)). The Court concluded, however, that the case fell under an exception to the no-extrinsic-evidence rule known as the "no possible power to act" exception to the no-extrinsic-evidence rule. *Id.* Under that exception, extrinsic evidence may be used to collaterally attack a judgment when a statute terminating a court's jurisdiction is firmly established policy of state. *See York*, 373 S.W.3d at 42 (extrinsic evidence of bankruptcy stay considered); *see also Cline v. Niblo*, 8 S.W.2d 633 (Tex. 1928) (evidence of whether the property was a homestead could be considered in collateral proceedings because homestead property had been statutorily withdrawn from the jurisdiction of the probate court).

For example, in *York,* the Texas Supreme Court held the no-extrinsic-evidence rule did not bar the court from considering extrinsic evidence that a bankruptcy stay was in place at the time the court rendered judgment. *Id.* at 35, 42. The *York* court held the extrinsic evidence should have been considered because "[a]s a matter of Texas law, a state court has no power to render a judgment in violation of the automatic stay under fundamental, constitutional law, . . ." *Id.* at 42.

Similarly, in *Cline*, the supreme court permitted extrinsic evidence to be used in the collateral attack of an order of the probate court authorizing the sale of a homestead. 8 S.W.2d at 638. The court noted Texas had statutorily withdrawn "homestead property from the jurisdiction of the probate court and deny it power to

administer the homestead estate except where debts exist for which such an estate is constitutionally liable." *Id.* at 636. Accordingly, "in the absence of an affirmative showing in the decree that the question was adjudicated in the judgment leading up to the sale," the issue of whether the property was homestead or the debts involved were chargeable against a homestead could "be inquired into and declared a nullity in collateral proceedings." *Id.* The supreme court characterized this as a "declination on the part of the courts to conclusively presume" the homestead issue had been determined absent an affirmative showing in the record. *Id.* at 638. "[W]here the vice in the decree does not appear on its face, and the judgment does not show that the homestead question has been adjudicated, the courts permit the true facts to be shown and the invalidity of the decree to be established aliunde the record." *Id.*

In *D.S.*, the court reasoned there was "no material difference" between the UCCJEA's home state requirement and the statutes at issue in *York* and *Cline* because each statute withdrew from the trial court its jurisdiction to act in certain situations. 555 S.W.3d at 318. The UCCJEA withdrew a trial court's jurisdiction to make an initial child custody determination if Texas is not the child's home state and does not have jurisdiction of the child under the other provisions of section 152.201(a) of the family code. *Id.* (citing TEX. FAM. CODE § 152.201(a)). The *D.S.* court concluded the trial court erred by determining it could not consider extrinsic evidence to decide whether it had subject matter jurisdiction to make the initial child custody determination. *Id.*

Here, in contrast, Topletz does not challenge the trial court's determination that it had jurisdiction over the claims in the 2012 Lawsuit. Rather, he challenges the Partnership's standing to assert claims in the 2012 Lawsuit. Moreover, the statute at issue here does not implicate subject matter. *See* TEX. BUS. ORG. CODE § 11.356. Although the statute may deprive the Partnership of the legal right to assert its causes of action in court, the statute does not deprive the trial court of jurisdiction to decide those claims because such claims could be brought derivatively by Willis following the Partnership's termination. *See, e.g.*, *Gonzalez v. Gonzalez*, No. 05-16-00238-CV, 2017 WL 3599773, at *2 (Tex. App.—Dallas Aug. 22, 2017, no pet.) (mem. op.) (shareholders held beneficial title to corporation's causes of action following termination of charter and had standing to assert those causes of action as corporation's representatives or to defend their individual property rights); *see also Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 778 (Tex. 2020) (concluding "statutory provisions that define and limit a stakeholder's ability to recover certain measures of damages, which protect the organization's status as a separate and independent entity . . . go to the merits of the claim; they do not strip a court of subject-matter jurisdiction to render a take-nothing judgment if the stakeholder fails to meet the statutory requirements."). For these reasons, we conclude *D.S.* is inapplicable here and this case does not fall under the "no possible power to act" exception to the no-extrinsic-evidence rule.

In post-submission briefing, Topletz points the Court to the Texas Supreme Court's May 13, 2022 opinion in *Mitchell v. Map Resources, Inc.*, 649 S.W.3d 180 (Tex. 2022). Topletz maintains the *Mitchell* opinion supports his contention that extrinsic evidence should have been considered here under what he terms "the entrenched exception to the no-extrinsic-evidence rule." We disagree.

As a preliminary matter, *Mitchell* is distinguishable from this case. *Mitchell* involved questions concerning whether service by posting met due process requirements. In December 1998, the Pecos-Barstow-Toyah Independent School District, Reeves County Hospital District, and Reeves County (collectively the Taxing Authorities) sued approximately 500 owners of more than 1600 parcels of mineral property who had failed to pay their property taxes. *Mitchell*, 649 S.W.3d at 184. Elizabeth Mitchell owned 320 acres of the subject property and was one of the defendants sued by the Taxing Authorities. *Id.* None of the defendants, however, were personally served with the lawsuit. *Id.* Rather, the Taxing Authorities posted citations on the door of the Reeves County Courthouse to notify the defendants they had been sued. *Id.* In early 1999, the Taxing Authorities obtained a default judgment foreclosing tax liens on all 1600 parcels, including Elizabeth's mineral interests. *Id.* ("Roughly one month, two attorneys ad litem, and a five-minute bench trial later, the court signed a default judgment foreclosing tax liens on all 1600 parcels, including mineral interests in 320 acres owned by Elizabeth S. Mitchell."). Sixteen years later,

Elizabeth's heirs (the Mitchells) sued to have the 1999 judgment and subsequent sale set aside for constitutional due process violations. *Id.* at 185.

The Mitchells argued the default judgment was void because Elizabeth Mitchell was not personally served in compliance with constitutional due process requirement and, as a result, the trial court did not acquire personal jurisdiction over her. *Mitchell*, 649 S.W.3d at 185. The parties disputed what evidence a court could consider in deciding whether Elizabeth was properly served by posting. *Id.* at 188. The *Mitchell* court held that public deed records and tax records could be considered in a collateral attack because "the Constitution and Rule 117a require a plaintiff to consult" those records to comply with "the constitutional demands of due process." *Id.* at 191. In so holding, however, the Court reaffirmed the general rule that "extrinsic evidence cannot be considered in a collateral attack to set aside a final judgment." *Id.* at 190–91. The Court explained that the question presented in *Mitchell* fell within the exception applied in *York* because proper service is a constitutional prerequisite for a trial court's jurisdiction to proceed. *Id.* (noting the no-extrinsic-evidence rule "does not extend to cases over which a court 'has not, under the very law of its creation, any possible power.'") (internal citation omitted).

The exception relied on in *Mitchell* and *D.S.* applies when the trial court had no authority to act by virtue of a statute or the Constitution. Here, section 11.356 did not deprive the trial court of jurisdiction or prohibit the trial court from hearing the claims. *See* TEX. BUS. ORG. CODE § 11.356. No constitutional requirements or

–21–

prerequisites are implicated here. On the contrary, the trial court had jurisdiction to hear Willis's individual and derivative claims. Whether the trial court erred by awarding the Partnership relief, or whether the Partnership may legally collect the judgment, are matters concerning the merits of the claims, not the trial court's jurisdiction to hear those claims. We conclude no exception to the no-extrinsic-evidence rule applied here. As such, the trial court did not err by refusing to consider the extrinsic evidence presented by Topletz in his collateral attack. The collateral attack, therefore, failed as a matter of law. We affirm the trial court's summary judgment on that basis.

In their appellate briefs, the parties focus much of their arguments on questions surrounding the Partnership's standing and capacity to sue and the derivative versus direct nature of Willis's claims and damages. We need not address any of those questions, however, because the 2015 Judgment shows on its face that the trial court had jurisdiction over the parties and claims, and we are prohibited from looking to extrinsic evidence to show the contrary. Under this record, we conclude the 2015 Judgment was not void based on the record as it stood at the time those judgments were rendered. The trial court, thus, did not err by granting Wadle's summary judgment on those grounds. We overrule Topletz's first issue.

## II.     The Sanctions Order

In his second issue, Topletz challenges the trial court's assessment of sanctions against his counsel. The trial court awarded Wadle $17,000 as attorney's

fees through the date of the order and conditional appellate fees.[4] The trial court assessed the sanctions award against Topletz's counsel, Austin Champion. Topletz does not contest the evidence supporting the amount of sanctions awarded. Rather, Topletz maintains his counsel's conduct in filing the bill of review did not warrant any sanction by the trial court.

## A.    Applicable Law

The trial court ordered sanctions against Champion pursuant to Chapter 10 of the Texas Civil Practice and Remedies Code, Rule 13 of the Texas Rules of Civil Procedure, and the court's inherent authority.

A trial court may sanction an attorney or represented party under rule 13 if a pleading, motion, or other filing is "groundless" and brought either in bad faith or for purposes of harassment. TEX. R. CIV. P. 13. The trial court must "presume that pleadings, motions, and other papers are filed in good faith." *Id.* The party seeking sanctions bears the burden of overcoming that presumption. *Nath v. Tex. Children's Hosp.*, 446 S.W.3d 355, 361 (Tex. 2014). A filing is "groundless" for purposes of Rule 13 if it has "no basis in law or fact and [is] not warranted by good faith argument for the extension, modification, or reversal of existing law." TEX. R. CIV. P. 13. In determining whether a filing is groundless, the trial court must objectively consider whether the party and counsel made a reasonable inquiry into the legal and factual

---

[4] Topletz challenges the sanctions award of $17,000 in attorney's fees. In his reply brief to this Court and during oral argument, however, he withdrew his challenge to the award of conditional appellate fees.

basis of the claim at the time of the filing. *Allstate Prop. & Cas. Ins. Co. v. Ford*, No. 05-20-00463-CV, 2021 WL 4810358, at \*2 (Tex. App.—Dallas Oct. 15, 2021, pet. denied) (mem. op.). In addition to being groundless, a sanctionable filing under Rule 13 must also be false when made, brought in bad faith, or brought for purposes of harassment. *Id.* "Rule 13 requires the trial court to hold an evidentiary hearing to make the necessary factual determinations about motives and credibility of the person signing the alleged groundless [pleading]." *Id.* at \*3 (quoting *McCain v. NME Hosps., Inc.*, 856 S.W.2d 751, 757 (Tex. App.—Dallas 1993, no writ)).

A trial court may also award sanctions under civil practices and remedies code chapter 10 if a pleading or motion is filed for an improper purpose or if it lacks legal or factual support. *See* TEX. CIV. PRAC. & REM. CODE §§ 10.001, 10.004. Section 10.001 provides:

> The signing of a pleading or motion as required by the Texas Rules of Civil Procedure constitutes a certificate by the signatory that to the signatory's best knowledge, information, and belief, formed after reasonable inquiry:
>
> > (1) the pleading or motion is not being presented for any improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> >
> > (2) each claim, defense, or other legal contention in the pleading or motion is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; [and]
> >
> > (3) each allegation or other factual contention in the pleading or motion has evidentiary support or, for a

specifically identified allegation or factual contention, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

TEX. CIV. PRAC. & REM. CODE § 10.001(1)–(3). Like Rule 13, Chapter 10 generally requires an "evidentiary hearing to make necessary factual determinations about the motives and credibility of the person signing the allegedly groundless pleading." *Ford*, 2021 WL 48010358, at *3. Unlike Rule 13, however, the trial court may award sanctions based solely on a claim being made without a legal or factual basis. *See Nath*, 446 S.W.3d at 369. But the trial court may not assess a monetary sanction against a represented party based on legal contentions in a pleading. *Id.*; *see also* TEX. CIV. PRAC. & REM. CODE § 10.004.

Whether under rule 13 or chapter 10, the trial court's order must specify the reasons for awarding sanctions. TEX. R. CIV. P. 13; TEX. CIV. PRAC. & REM. CODE § 10.005. This requirement is mandatory and failing to explain the basis for a sanctions award is reversible error. *See Burleson v. Collin Cty. Cmty. Coll. Dist.*, No. 05-21-00088-CV, 2022 WL 17817965, at *4–5 (Tex. App.—Dallas Dec. 20, 2022, no pet. h.) (mem. op.) (citing *Graman v. Graman*, No. 05-14-01254-CV, 2016 WL 235055, at *6 (Tex. App.—Dallas Jan. 20, 2016, no pet.) (mem. op.)).

A court's inherent authority includes the "power to discipline an attorney's behavior." *Brewer v. Lennox Hearth Products, LLC*, 601 S.W.3d 704, 718 (Tex. 2020) (quoting *In re Bennett*, 960 S.W.2d 35, 40 (Tex. 1997)). Courts are empowered to punish an attorney's behavior "even when the offensive conduct is

not explicitly prohibited by statute, rule, or other authority." *Id.* "The inherent authority to sanction is limited by due process, so sanctions must be just and not excessive." *Id.* Invocation of the court's inherent power to sanction, therefore, must be used sparingly and requires a finding of bad faith. *Id.* Accordingly, a court's inherent power to sanction "exists to the extent necessary to deter, alleviate, and counteract bad faith abuse of the judicial process . . . ." *Id.* As the *Brewer* court explained "[b]ad faith is not just intentional conduct but intent to engage in conduct for an impermissible reason, willful noncompliance, or willful ignorance of the facts" and includes

> conscious doing of a wrong for a dishonest, discriminatory, or malicious purpose. Errors in judgment, lack of diligence, unreasonableness, negligence, or even gross negligence—without more—do not equate to bad faith. Improper motive, not perfection, is the touchstone. Bad faith can be established with direct or circumstantial evidence, but absent direct evidence, the record must reasonably give rise to an inference of intent or willfulness.

*Id.* at 719.

## B.    The trial court's findings

In support of its decision to sanction Champion, the trial court made multiple findings, which we summarize below:

- Topletz's lawsuit was without merit, groundless, filed in bad faith, brought for the purpose of harassment and needlessly increased the costs of litigation between the parties in violation of Chapter 10 and Rule 13;

- Topletz's Petition for Bill of Review and Motion for Summary Judgment were frivolous and lacked legal and factual support.

- Topletz's Petition for Bill of Review and Motion for Summary Judgment were filed for an improper and malicious purpose and suit was maintained by Topletz's counsel, "including to harass [Wadle] and to cause [Wadle] to incur needless costs of defending suit."

- Topletz "(through his counsel)" filed the bill of review action "to needlessly run up [Wadle's] legal bills and costs" and to "prevent [Wadle] from making further attempts to collect on the [2015 Judgment]."

- Topletz "(through his counsel) intentionally filed his bill of review suit in a court other than in this Court and was improperly filed in Dallas County, Texas."

- Champion, knew or should have known that the bill of review suit should have been filed in the Collin County court.

- Champion initially brought this suit in Dallas County in bad faith with the improper purpose of forum shopping, for the specific, improper purpose of avoiding compliance with rulings made by the Collin County court, including the 2019 Contempt Judgment, and to harass and cause Wadle to needlessly incur legal expenses and costs.

- Champion attempted to mislead the Dallas County court by filing the bill of review "without clearly or adequately pleading [sic] the basis of the case stems from Collin County and failing to advise the Dallas District Court of the existing contempt order against [Topletz]" and the denial of the petition for writ of habeas corpus, and failing to disclose "the existence of ongoing litigation between the parties before" the Collin County court.

- The relief sought by Topletz is unavailable to him and had no basis in law or fact.

- Champion brought this suit without a proper legal basis.

- The Collin County court had jurisdiction to render the 2015 judgment, and such jurisdiction appeared on the face of the record. Champion knew or should have known those facts.

- The statute of limitations to challenge the 2015 Judgment had expired at the time the bill of review action was filed. Champion knew or should have known that fact.

- Topletz's lawsuit and "all other documents filed with [the Collin County court] lacked merit and lacked any factual or legal support when filed." Such filings were groundless when filed, in bad faith, for the sole purpose to harass Wadle and increase litigation costs, and were not warranted by any good faith argument for the extension, modification, or reversal of existing law, and were brought to discourage Wadle from engaging in further efforts to enforce the 2015 Judgment.

- Champion's conduct "is the primary basis for the filing and maintenance of meritless pleadings and conduct to perpetrate harm to [Wadle]."

- Champion never took any position before the Collin County court that the 2015 Judgment was void until filing such claims in Dallas County. The court concluded Champion filed in Dallas County to "improperly undermine [its] jurisdiction over [the 2015 Judgment]."

Topletz maintains the trial court abused its discretion by sanctioning Champion. We disagree.

### C.    Application of law to facts

Under this record, we cannot say the trial court abused its discretion by finding that Topletz brought the bill of review action for an improper purpose or that the bill of review lacked legal or factual support. *See* TEX. CIV. PRAC. & REM. CODE §§ 10.001, 10.004. In its order, the trial court described Champion's conduct that was subject to sanction, which began with Champion's efforts over the course of three years to avoid complying with the trial court's order compelling Topletz to produce documents in post-judgment discovery and escalated to the filing of a bill of review

–28–

in Dallas County to overturn a judgment rendered in Collin County five years earlier. Even if Champion's efforts to avoid post-judgment discovery were in good faith, his continued effort to overturn the contempt judgment without complying with the order compelling production after failing to obtain habeas relief from three courts illustrated an improper purpose. The record is replete with examples of delay tactics, forum shopping, and gamesmanship by Champion. An obvious example is Champion's decision to file the bill of review in a county other than the county in which judgment was rendered. The record shows that the decision needlessly delayed the proceedings and increased the costs to Wadle.

Further, the bill of review itself lacked legal and factual support. As discussed above, the 2015 Judgment included binding jurisdictional recitals. Moreover, Champion filed the bill of review without raising jurisdictional questions in any post-judgment or appellate filing. Those decisions infer an intent to file pleadings for harassment or other improper purposes. Topletz implies the trial court sanctioned Champion solely for filing the bill of review in the Dallas County court. The sanctions order belies this proposition. The trial court's order explains the reasons for the sanctions against Champion, and the record supports those findings. We conclude the evidence supports the sanctions under Chapter 10 of the civil practice and remedies code as well as under the trial court's inherent authority to sanction. TEX. CIV. PRAC. & REM. CODE § 10.001; *Brewer*, 601 S.W.3d at 718. Because we uphold the sanctions under Chapter 10, we do not address the propriety of the

–29–

sanctions imposed under Rule 13. *See* TEX. R. APP. P. 47.1; *see also Jordan v. Elrod*, No. 05-98-02046-CV, 2001 WL 856238, at \*4 (Tex. App.—Dallas July 30, 2001, no pet.) (mem. op.). Indulging every legal presumption in favor of the trial court's ruling and viewing the evidence in the light most favorable to that ruling, we cannot conclude the trial court abused its discretion in imposing sanctions on Champion in this case. We overrule Topletz's second issue.

## CONCLUSION

We conclude the trial court properly denied Topletz's bill of review and did not abuse its discretion by ordering sanctions against Champion. Accordingly, we affirm the trial court's March 11, 2021 judgment and April 13, 2021 sanctions order.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

210047F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

STEVEN K. TOPLETZ, Appellant

No. 05-21-00047-CV     V.

RAYGAN WADLE, AS
INDEPENDENT EXECUTOR OF
THE ESTATE OF LYNDA WILLIS,
Appellee

On Appeal from the 416th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 416-03100-
2020.
Opinion delivered by Justice Partida-
Kipness. Justices Pedersen, III and
Nowell participating.

    In accordance with this Court's opinion of this date, the trial court's March 11, 2021 judgment and April 13, 2021 sanctions order are **AFFIRMED**.

    It is **ORDERED** that appellee RAYGAN WADLE, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LYNDA WILLIS recover his costs of this appeal from appellant RAYGAN WADLE, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LYNDA WILLIS.

Judgment entered this 11th day of January 2023.